Lucille SMITH, Plaintiff–
Appellant/Cross–
Appellee,

v.

**GREAT AMERICAN RESTAURANTS,
INC., Defendant–Appellee/Cross–
Appellant.**

Nos. 91–1793, 91–1864.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1991.

Decided July 24, 1992.

Raymond J. Hafsten, Jr. (argued), Michael J. Cork, Indianapolis, Ind., for plaintiff-appellant.

Mark J.R. Merkle, Kreig, Devault, Alexander & Capehart, Indianapolis, Ind., Ted M. McKinniss (argued), John L. Ashworth, Ashworth & McKinniss, Marion, Ohio, for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and WILL, Senior District Judge.[*]

CUDAHY, Circuit Judge.

Lucille Smith prevailed against Great American Restaurants (GAR) on her claim brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and a jury awarded her damages for willful discrimination. The district court granted judgment notwithstanding the verdict (JNOV) on the issue of Smith's duty to mitigate, reducing the award of damages from $56,000 to $18,000 (before doubling for willfulness). On appeal, Smith challenges the court's reduction for mitigation and its reduction of attorney's fees. GAR also appeals, raising several evidentiary issues and arguing that the court should have reduced the damages award more than it did.

## I.

Lucille Smith worked for GAR and its predecessor, L–K Restaurants, in Daleville, Indiana for approximately nine years. She began as a waitress but was soon promoted to unit manager, assuming the responsibilities for staffing, training, purchasing, receiving and supervising the Daleville restaurant's sixteen employees. For about one year before Smith's employment at GAR ended, her supervisor was Michael Mills. Mills evaluated Smith's performance several times and consistently gave her favorable evaluations.

Smith was 46 years old in January 1988, when her employment was terminated. During 1987, Erma Bolan, age 54, worked as a management trainee under Smith. Bolan testified that she heard Mills make derogatory comments to Smith regarding her age. Mills said, for example, "Lucy, you starting to get old?" and "[T]hat is a sign of old age." Mills also subjected Bolan to such negative age-based comments on a "constant" basis, according to Bolan. Bolan told Mills that she did not appreciate these remarks and that they "could get him

in trouble." Bolan also testified that Mills told the managers that GAR was looking for younger managers. In late 1987, Mills visited the Daleville restaurant with GAR's vice president, Haig Antranikian. According to Smith's testimony, Antranikian was displeased with the older women working at the restaurant and communicated through Mills that Smith "should hire younger people" in order to "decorate your floor and help your business." Mills specifically directed Smith to consider replacing a waitress, Jewell Traylor, who was 70 years old, because Antranikian was "not happy with her age."

The events of January 20, 1988 were sharply contested at trial. According to Smith, Mills informed her that she was to be terminated under instructions from Antranikian and Brian Crum, another vice president of GAR. The reason given by Mills was that the facility was going to be converted to a 24–hour operation, which would require younger management, and Smith was considered "too old to cut it." Mills informed Smith (according to her testimony) that she was fired as of that day, but that the company would like her to continue working for three more weeks, at which time she would be replaced by (27–year–old) Robert Yanez. Employees of the Daleville restaurant testified that Smith had informed them that she had been fired. According to GAR, on the other hand, Smith was not fired on January 20, but simply walked off the job to start her own restaurant. GAR presented testimony of other employees that Smith told them that she had quit her job, and that she had previously expressed interest in opening a restaurant.

On the day following Smith's termination, she returned to the restaurant, telephoned Mills and informed him that she was not staying at work. Also on that day, Mills advised Bolan (who was then acting manager of GAR's Peru facility) that he had not wanted to fire Smith but had had no choice because his superiors wanted a younger manager there. Mills told Bolan:

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

"It had to be the hardest thing I have ever done in my life."

On the same day, Smith went to the Indiana Job Source (a state agency), and placed an application for restaurant management positions in the Anderson, Indiana area. She was told that there were currently no openings in the area but that she would be called if any positions became available. Smith never received a call from the agency. Shortly thereafter, Smith orally leased a small restaurant facility and started her own restaurant business. She testified that she had agreed to a lease payment of ten percent of sales, but that she could have gotten out of the lease if a better job offer came along. Smith relied on her savings and a gift from her son to open the restaurant, which was called Lucy's Family Dining and opened on February 27, 1988. In July 1988, Smith borrowed $55,000 to purchase the facility. According to Smith's accountant, Jean Yoder, Lucy's Family Dining showed a net loss of $48,000 for 1988, a net loss of $18,000 for 1989 and a net profit of $2,261 through October of 1990.

The jury returned a verdict in favor of Smith and specifically found: (1) that Smith was terminated from GAR; (2) that age was a determining factor in Smith's termination; (3) that GAR willfully violated the ADEA; (4) that Smith sustained damages of $55,998 in lost wages and benefits; and (5) that nothing should be deducted for amounts that Smith could have earned in the exercise of reasonable diligence to mitigate her damages. The district court denied GAR's motion for JNOV on the issues of discrimination and willfulness and its motion for a new trial. However, the court granted JNOV on the issue of mitigation, setting aside the jury's award of $55,998 and instead awarding $18,113 (doubled to $36,226 for willfulness). The district judge reasoned that, while Smith's self-employment could be considered reasonable mitigation, it ceased to be reasonable after 11 months, when Smith should have known that her restaurant was not profitable. Finally, the district court awarded $22,290 in attorney's fees (of the requested $56,996)

and $1,068 in costs and expenses (of the requested $1,955).

## II.

### A. Liability

GAR argues that the evidence at trial was insufficient to support the jury's findings of age discrimination and willfulness, and that the district court erred in admitting certain prejudicial testimony. We review *de novo* the district court's grant or denial of a motion for JNOV, applying the same standard applied by the district court. If the evidence, together with all reasonable inferences drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the nonmovant, the verdict must stand. *Cygnar v. City of Chicago*, 865 F.2d 827, 834 (7th Cir.1989). The authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). While the district court may properly grant a new trial if the verdict is contrary to the clear weight of the evidence, we will not disturb the district court's decision not to do so absent exceptional circumstances showing a clear abuse of discretion. *Cygnar*, 865 F.2d at 835.

### 1. Age Discrimination

In order to establish liability under the ADEA, a plaintiff must prove that age was a determining factor in an adverse employment decision. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 657–58 (7th Cir.1991) (en banc); *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990). GAR argues that the jury's verdict should be set aside because there was insufficient evidence that age played a role in this case. It is true that the evidence at trial conflicted sharply. GAR's witnesses testified that Smith was not fired at all, but quit in order to open her own restaurant. The jury, however, chose to believe Smith and her witnesses, who testified that she was fired specifically for being "too old to cut it."

This is not a case in which the employee's charge of illegal discrimination rests on mere conjecture. Here there was ample evidence, including direct evidence, of age-based discrimination. In addition to Smith's own testimony, which was buttressed by the testimony of other GAR employees, there was the testimony of Erma Bolan, who was informed by Mills that he had fired Smith in order to replace her with a younger manager. Bolan also overheard Mills say to Smith, "Lucy, you're starting to get old." Three GAR employees reported receiving negative comments regarding age from their superiors. There was evidence that GAR told its managers in 1987 that it was looking for younger managers. And when Vice President Antranikian visited the Daleville restaurant in late 1987, he reportedly advised that Smith "should hire younger people" in order to "decorate [her] floor." Given this array of evidence, we have no difficulty concluding that the jury could rationally find that Smith was discharged because of her age. Our discussion should not be read to imply, however, that such direct evidence is required in ADEA cases. The Supreme Court has instructed that "the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979)).

GAR's argument that its conflicting evidence required a verdict in its favor can be disposed of briefly. Mills' and Antranikian's general denials that age was a factor ran headlong into the testimony of Smith's witnesses. The jury obviously credited the latter and discredited GAR's evidence. Such credibility determinations are crucial in discrimination cases and are the particular province of the jury. *See Mathewson v. National Automatic Tool Co.*, 807 F.2d 87, 90–91 (7th Cir.1986). In addition, GAR's evidence that a significant number of other managers were in the protected age group is unavailing. Such evidence simply does not dictate a finding that Smith was not fired because of her age, particularly where the discharge appears to have been part of a new policy of installing younger managers. GAR's theory would insulate employers from liability for age discrimination until such an invidious policy had been largely implemented. The jury's finding of age discrimination was permissible, and the district court did not err in declining to enter JNOV or to grant a new trial.

### 2. *Willfulness*

■ The ADEA establishes a two-tiered liability scheme, providing for double damages only in cases of willful violations. 29 U.S.C. § 626(b); *Thurston*, 469 U.S. at 125–28, 105 S.Ct. at 623–25. While we have held that first-tier age discrimination may be "subtle and even unconscious," *Burlew v. Eaton Corp.*, 869 F.2d 1063, 1066 (7th Cir.1989), a showing of willfulness requires that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834, 835 (7th Cir.1988) (quoting *Thurston*, 469 U.S. at 128, 105 S.Ct. at 625). We have already concluded that there was sufficient evidence for a finding that age was a determining factor in GAR's termination of Smith. There was also sufficient evidence that the termination was a willful violation of the ADEA. GAR presented a bold defense at trial, arguing that Smith was not terminated in the first place. It did not seriously argue that *if* she was terminated, and *if* Mills and Antranikian actually made the statements attributed to them, its violation was not willful. In addition to the evidence described earlier, it was uncontested at trial that GAR had a written policy against age discrimination and that the policy was based on federal law.

■ GAR argues: "To be sure the company knew of its responsibility under the Act but there simply was no showing that Mills consciously considered the Act even assuming he fired the Plaintiff." GAR Br. at 40. We have declared that an employer certainly acts willfully when it "consciously and deliberately does what it knows or must know the ADEA prohibits." *Brown v. M & M/Mars*, 883 F.2d 505, 514 (7th

Cir.1989). But there is no rule requiring that the employer must have been actually contemplating the ADEA at the moment of the improper employment decision. Moreover, there is no requirement of direct evidence of willfulness (a requirement that would doom most plaintiffs' cases, since few employers leave a convenient record of their illegal intent). Having found that GAR fired Smith because of her age, the jury could also rationally infer that it acted with knowledge that, or in reckless disregard as to whether, its conduct was unlawful age discrimination.

A closer question is presented by GAR's contention that the district court's jury instruction on the issue of willfulness was erroneous. The instruction stated that for a willful violation the "employer must have known, or should have known or shown reckless disregard for the matter of whether the conduct was prohibited by the ADEA." For a number of years there was some confusion in the cases as to the proper standard for willfulness. While the Supreme Court utilized a "knew or showed reckless disregard" standard in 1985 when it decided *Thurston,* a number of our subsequent cases continued to hold that the "knew or reasonably should have known" standard from *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 156 (7th Cir.1981), was proper. *See Coston,* 860 F.2d at 836 (citing cases). The confusion was cleared up in 1988, when the Court in *Coston* overruled the *Syvock* standard on the authority of *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

GAR relies on *Coston,* 860 F.2d at 835–36, and *Brown,* 883 F.2d at 512, which set aside verdicts that were based on the "knew or reasonably should have known" instruction from *Syvock.* As Smith points out, however, the instruction here was different; it appears to be a sort of hybrid (and not a particularly clear one). Smith contends that the operative word in the rejected instruction is "reasonably," and that the instruction here was not erroneous because it omitted that word. But the phrase "should have known" is quite close to the phrase "reasonably should have known": both, viewed in isolation, represent a negligence or reasonableness standard rather than a recklessness standard. *See, e.g., Coston,* 860 F.2d at 837.

▮ Nevertheless, we believe that the instruction given by the district judge does not warrant reversal in this case. First, GAR failed to object to the instruction as required by Fed.R.Civ.P. 51 and appears therefore to have waived its argument. Rule 51 provides: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." When the district judge asked if there were any objections to the jury instructions, GAR's counsel replied, "No, Your Honor." GAR argues that it functionally met the requirements of Rule 51 by submitting a proposed instruction containing the correct standard for willfulness at the charge conference. Unfortunately, what transpired at the charge conference is not a matter of record because no reporter was present. GAR does not specifically contend, however, that it "stat[ed] distinctly the matter objected to and the grounds of the objection"; it asserts merely that the "trial court was aware that GAR desired its proffered instruction." GAR Br. at 37. That is not enough. The submission of a proposed jury instruction, without more, does not preserve a specific objection to the instruction given by the court. *See Grosvenor Properties Ltd. v. Southmark Corp.,* 896 F.2d 1149, 1152 (9th Cir.1990); *Guerts v. Barth,* 892 F.2d 622, 624 (7th Cir.1989).[1]

---

1. GAR cites two cases in which courts found Rule 51 satisfied even though there was no specific objection to the jury instructions. *Mark Seitman & Associates, Inc. v. R.J. Reynolds Tobacco Co.,* 837 F.2d 1527, 1530 (11th Cir.1988); *Martinelli v. City of Beaumont,* 820 F.2d 1491, 1493–94 (9th Cir.1987). In those cases, however, the specific grounds for objection to the instructions were made clear at the charge conference or at trial. Both courts quoted from the relevant portion of the transcript to show that the trial judge had been adequately apprised of the specific basis for the objection.

Moreover, even if GAR's objection to the willfulness instruction had not been waived, we do not think the instruction requires reversal. In reviewing a challenge to a jury instruction, we examine the instructions as a whole. *Dresser Industries, Inc. v. Gradall Co.*, 965 F.2d 1442, 1452 (7th Cir.1992). The instruction given here, considered in context, was not reversible error. First, the "should have known" language was couched between the phrases "must have known" and "shown reckless disregard" and was less prominent than the "reasonably should have known" formulation rejected in our previous cases. And second, given the direct nature of the plaintiff's evidence and its stark contrast to the defendant's evidence, the instruction almost certainly did not affect the verdict.

### 3. Admission of Testimony

GAR argues that the testimony of four witnesses repeating or relying on what Smith had told them should have been excluded on grounds of hearsay or relevance. Two of the witnesses, Jewell Traylor and Ernest Moore, were permitted to testify about Mills' reported statement to Smith that Antranikian wanted younger waitresses to "decorate" the floor. Another witness, Margaret Farlee, testified generally about GAR's reported plan to acquire younger managers. And Erma Bolan was allowed to testify about what Smith had reported as to why Mills had discharged her.

The district judge has a particularly wide range of discretion in ruling on the admissibility of evidence. Indeed, we have gone so far as to declare that appellants who challenge evidentiary rulings "are like rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a

needle." *United States v. Glecier*, 923 F.2d 496, 503 (7th Cir.) (citing Matthew 19:24), *cert. denied,* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).[2] We find no abuse of the district court's discretion. The statements were admitted not for the truth of what was asserted, but to establish that the statements attributed to Smith were actually made. The testimony was relevant for that purpose, first, to show that Smith's version of events was consistent (a fact that GAR contested at trial), and second, to establish the reasons that certain GAR employees resigned (a matter placed in issue by GAR's contention that Smith persuaded the employees to leave with her). Moreover, in each case the district judge gave a limiting instruction. Finally, we cannot agree with GAR, particularly given the limiting instructions, that these few statements were so prejudicial that they had to be excluded under Federal Rule of Evidence 403.

### B. Damages

Both parties challenge the district court's JNOV on the issue of mitigation of damages. The jury awarded Smith $55,998 in actual damages. It was then instructed to answer the following question: "From the sum entered above, what amount, if any, is deducted for plaintiff's actual earnings and any amount plaintiff could have earned in the exercise of reasonable diligence to mitigate her damages?" The jury's unanimous answer was "zero." It thus awarded Smith back pay for the entire 34 months following her termination and declined to deduct any amount for the period during which Smith's restaurant was not profitable. The district judge agreed that Smith's self-employment could constitute reasonable mitigation of damages, but concluded that 34 months was too long for her restau-

---

**2.** Presumably it is difficult to get a camel through the eye of a needle, although just how difficult is a matter of some dispute. Some have argued that the phrase "eye of a needle" was intended to denote a gate to the city of Jerusalem. *See, e.g.,* W.C.R. Whalley, *Camels and Needles,* The Economist, March 3, 1984, p. 6. Others have suggested that the word for "camel" should have been translated as "rope." *See* Pinchas Lapide, *Jesus, Money and World*

*Peace* (1991). Both alternatives suggest that the difficulty of leading a "camel" through the "eye of a needle" is not as great as one might suppose. Shortly after the disputed passage, Matthew assures us that indeed "all things are possible," Matthew 19:26—perhaps by greasing the camel. *See, e.g., Fortino v. Quasar Co.,* 950 F.2d 389, 395–96 (7th Cir.1991) (reversing age discrimination verdict on evidentiary grounds).

rant enterprise to be considered a reasonable attempt at comparable employment. Since it had become clear in the final months of 1988 that Smith's restaurant was not yet turning a profit, the court found that Smith had a duty at that point to seek other employment. It therefore limited her damages to 11 months of back pay, $18,113. Smith argues that she was entitled to the full 34 months of pay awarded by the jury, while GAR argues that the damages should have been limited to just one month of back pay.

A discharged ADEA plaintiff has a duty to exercise reasonable diligence in attempting to mitigate damages by finding comparable work. The defendant, however, has the burden of proving that the plaintiff has failed to discharge its duty. *Syvock*, 665 F.2d at 159. The issue of mitigation is a question of fact for the jury. *Smith v. Rowe*, 761 F.2d 360, 366–67 (7th Cir.1985). Self-employment can constitute employment for purposes of mitigating damages, as long as the self-employment was a reasonable alternative to finding other comparable employment. *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3d Cir.1988); *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988). Moreover, the plaintiff's burden to mitigate damages does not require success, but only an honest, good faith effort. *Id.*

After being terminated, Smith initially looked for a job by submitting an application at the Indiana Job Source (which never contacted her) and reading advertisements in the newspaper. Within about a week, however, she entered into an oral lease for her new restaurant facility and began making plans to start her business. A witness for GAR who managed an employment agency, Sue Skinner, testified that in 1988 there were several restaurant management positions open in the geographical area within one and one-half hours of Smith's home. She stated that

someone with Smith's qualifications could have gotten a comparable job within four weeks. She also testified, however, that opening a restaurant was reasonable for someone with Smith's experience.

We must reject GAR's contention that Smith's duty of mitigation limits her damages to a single month of back pay. The cases indicate that self-employment, if reasonable, counts as permissible mitigation, and the jury could certainly conclude that Smith's efforts were reasonable. In fact, GAR's own witness conceded that Smith's opening of a restaurant was a reasonable venture. GAR's reliance on *Hansard v. Pepsi–Cola Metropolitan Bottling Co.*, 865 F.2d 1461 (5th Cir.), *cert. denied*, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989), is misplaced. In *Hansard*, the court explicitly recognized the general principle that self-employment can satisfy the burden of diligence in mitigation, but found the plaintiff's burden not satisfied by his flea market enterprise. In rejecting the plaintiff's efforts as insufficient, the court relied on the facts that he "did not approach the flea market as a business," that his "flea market business was never more than a part-time enterprise" and that he was "fully capable of continuing his job search during the week." *Id.* at 1468.[3] Here, in contrast, it is uncontested that Smith's efforts in opening and operating Lucy's Family Dining were serious and in fact much *greater* than required by an ordinary full-time job. A jury could rationally determine that Smith's self-employment was a reasonable, good faith exercise of diligence. The notion that starting one's own business cannot constitute comparable employment for mitigation purposes not only lacks support in the cases, but has a distinctly un-American ring.

We have greater sympathy for the district court's 11–month measure of damages. Given that Smith's decision to open her own restaurant was a reasonable effort at alternative employment, we must ask

---

**3.** With *Hansard* compare *Orzel v. Wauwatosa Fire Dep't*, 697 F.2d 743, 756–57 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983), and *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir.1975), in which this Court found part-time employment to satisfy plaintiffs' duty to mitigate.

whether such self-employment remained reasonable for the entire period covered by the jury's award. The ADEA must not be used as a tool for insuring a plaintiff's fledgling business while it continues to sustain losses. Damages should ordinarily extend only to the date upon which "the sting of any discriminatory conduct [has] ended." *Syvock,* 665 F.2d at 160 n. 14. The district court determined that by December 1988 Smith must have known that her business was not making a profit. At that point, the court held, GAR was no longer responsible for her lack of an income. The district court's 11–month measure makes sense.

But we are not deciding whether the district court's decision was rational; it is the jury's verdict that we must review. And it is worth reiterating that the jury's verdict must stand if it is *rational,* and that the plaintiff is entitled to every permissible inference from the evidence. Despite the permissibility of the district court's view, we cannot say that the jury's 34–month measure of damages was impermissible. First, we emphasize that the issue of reasonable mitigation is ultimately a question of fact for the jury. Second, while it is true that Smith's restaurant business did not show a net profit until its third year, its gross revenues were increasing, and the jury could determine that continuing with the enterprise was reasonable under the circumstances. Finally, one factor raised at trial and urged on appeal by Smith stands unaddressed by GAR and by the district court. Mills testified that he would tell prospective employers who contacted him that Smith simply walked off the job without notice, and that such a report would make it difficult for her to find employment. The jury thus could have rationally concluded that any efforts to find comparable employment would have been fruitless. On this permissible view of the evidence, the "sting" of discrimination did not end at the 11–month point after all; rather, GAR's "official" version of events continued to preclude Smith's employment by another employer. We note also that these issues were presented and argued before the jury. The defendant had (and used) its opportunity to argue that Smith's

self-employment was not reasonable mitigation. The jury rejected that argument.

Nevertheless, we cannot uphold the full amount awarded by the jury. The jury was instructed to deduct the amount of *actual earnings* from the award of damages. It is undisputed that Smith's restaurant business earned a net profit of $2,261.85 during 1990, its third year of operation. Since Smith owned the business, it seems clear that this amount should be attributed to Smith as earnings. *See* Dist.Ct. Order at 5 n. 2; *Carden,* 850 F.2d at 1005–06. Accordingly, the district court should deduct that figure from the award of $55,998, before doubling for willfulness.

## C. *Attorney's Fees*

■ Appellate review of an attorney's fee award is limited to a "highly deferential abuse of discretion standard." *Leffler v. Meer,* 936 F.2d 981, 984 (7th Cir.1991). Fee awards are left to the discretion of the district court because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). When attorney's fees are appropriate, however, the district court may not arbitrarily reduce the number of hours requested; if it reduces hours it should provide a "concise but clear explanation." *Tomazzoli v. Sheedy,* 804 F.2d 93, 97 (7th Cir.1986).

The district court provided such an explanation here. Nevertheless, we must remand for a new fee award for two reasons. First, the court's reduction in fees (from $56,996 to $22,290) appears to have been based largely on its reduction of damages on the issue of mitigation. Since we have ruled that the jury's verdict should be reinstated (with the minor exception of actual net profits from 1990), a new fee determination is appropriate. Second, it appears that the parties did not have an opportunity to respond on the issue of the fee calculation before the district court's ruling. We believe that the defendant is entitled to

respond to the hours and expenses contained in the fee petition, and additionally, that plaintiff's counsel is entitled to be heard on the matter before such a significant reduction in the requested hours is made by the court. *See Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984); *Tomazzoli*, 804 F.2d at 96.

We add only a few brief comments in the way of guidance for the recalculation of fees on remand. First, we note that where a plaintiff has obtained excellent results, her attorney should presumptively recover a fully compensatory fee, encompassing all hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. It is proper, of course, for the court to adjust the fee downward to account for unsuccessful claims, but such an adjustment is frequently inappropriate where the claims are so closely tied together that the "lawsuit cannot be viewed as a series of discrete claims." *Id.* Second, counsel should generally be compensated for reasonable expenses such as travel, telephone charges, photocopies and the like, and the denial of such expenses should be accompanied by some explanation. *See, e.g., Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984); *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). Finally, we reiterate that claimed hours should not be reduced by an arbitrary percentage. Given the district court's discretion, we do not question its characterization of this case as a "routine age discrimination case" or the propriety of taking that characterization into account under *Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3. We have some difficulty, however, with some of its significant reductions in attorney hours. For example, the court allowed only 50 hours for pretrial preparation and in trial. Since counsel spent approximately 40 hours either in trial or preparing for trial, this calculation left only 10 hours for pretrial motions, trial briefs, proposed jury instructions and evidence preparation.

## III.

For the reasons given, the judgment of the district court is Vacated and the case is Remanded for proceedings consistent with this opinion.