Art MANNING, Plaintiff,

v.

McGRAW–HILL, INC., Defendant.

Civil No. 94–WM–1697.

United States District Court,
D. Colorado.

Dec. 8, 1998.

David Lane, Paula Greisen, Miller Lane Kilmer and Greisen, Denver, CO, for plaintiff.

Karen E. Ford, Franklin A. Nachman, George F. Cicotte, Litler Mendelson, Denver, CO, for defendant.

## ORDER ON DEFENDANT'S MOTION PURSUANT TO RULES 50 AND 59, FED.R.CIV.P.

MILLER, District Judge.

Before me is defendant's Renewed Motion for Judgment as a Matter of Law and Alternative Request for a New Trial or to Alter or Amend the Judgment,[1] which requests that I:

1. Reverse the jury verdict on liability or order a new trial on that issue;

2. Reverse the jury verdict on willfulness or order a new trial on that issue;

3. Reduce the jury verdict on damages or order a new trial on that issue; and

4. Reduce the award of attorney fees.

Following review of the parties' motions, responses, replies and the record, I rule as follows:

### 1. *Liability*

The jury made its liability decision on the basis of the evidence presented. Viewing that evidence in the light most favorable to the plaintiff, *Klein v. Grynberg,* 44 F.3d 1497 (10th Cir.1995), there is evidence which directly, or by reasonable inference, would allow a jury to reach its verdict that age was a determining factor in plaintiff's discharge. Accordingly, defendant's Rule 50 motion for judgment as a matter of law should be denied. *Weese v. Schukman,* 98 F.3d 542, 546 (10th Cir. 1996); *Klein v. Grynberg, supra.*

A new trial should be granted if the verdict is against the clear weight of the

---

1. I note that defendant's motion was subject to my Order to Show Cause why the motion should not be stricken for its inappropriate statements. As suggested by the plaintiff, I will not penalize the defendant for its lawyer's improper advocacy by striking the motion. That matter, as well as the attorneys' fee issues, will be resolved by separate orders.

evidence. Moore's Federal Practice, Section 59.13. Viewing the evidence as a whole and considering the credibility determinations made by the jury, I cannot conclude that the jury's verdict on liability is "clearly, decidedly, or overwhelmingly" against the weight of the evidence as required by this Circuit to order a new trial. *Richardson v. City of Albuquerque,* 857 F.2d 727, 730 (10th Cir.1988). Accordingly, the motion for new trial on liability should be denied.

### 2. *Willfulness*

■ The same evidence that allowed the jury to conclude age discrimination may permit the inference that the defendant's violation of the ADEA was "willful" because the defendant either knew or showed reckless disregard of whether its conduct was prohibited by the ADEA in accordance with the standards established by *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Again, the jury's decision on this matter must be given deference, even if I would have decided otherwise. Defendant focuses solely on the evidence it believes favorable to it or on possible inferences which assist its reconstruction of the evidence, essentially reversing the applicable standard of viewing the evidence in the light most favorable to the non-moving party.

Defendant even makes the wholly unsubstantiated claim that plaintiff has a "higher burden of proof" or a "higher standard of proof" which must be met to prove willful discrimination. Defendant's Reply Brief, page 22. Not surprisingly, defendant provides no citation for such a misstatement of law. All matters in ADEA claims need only be proved by a preponderance of the evidence. *Tennes v. Commonwealth of Massachusetts, Dep't of Revenue,* 944 F.2d 372, 378 (7th Cir.1991).

■ Defendant's unsupportable assertion is at best but another attempt to make proof of "willfulness" more difficult than Congress intended, an exercise explicitly rejected by *Hazen,* which held that an ADEA plaintiff does *not* have to prove the employer's conduct outrageous, provide direct evidence of improper motivation, or prove that age was the predominant factor. 507 U.S. at 617, 113 S.Ct. 1701. It is not necessary that there be some additional or direct evidence of willfulness. Once the evidence is sufficient to show age discrimination, a jury may also conclude from facts such as those present here (knowledge of the ADEA, disputed performance ratings, ageist comments) that the discrimination was willful under the *Hazen* standard. See *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1098 (3d Cir.1995); *Molnar v. United Technologies Otis Elevator,* 37 F.3d 335 (7th Cir.1994).

Again, I cannot conclude that the jury's verdict was "clearly, decidedly, or overwhelmingly" against the weight of evidence. *Richardson,* 857 F.2d at 730.

■ Defendant also complains that its inclusion of a good-faith defense in its tendered "willful" instruction should have been given. The proposed instruction states, in relevant part, that if "the employer reasonably and in good faith believed that its action was permitted by the ADEA, the employer did not act 'willfully.'" Defendant's tendered Instruction No. 13. The defendant cited *Hazen* as authority, but *Hazen* prescribed a standard applicable to different circumstances than those presented here: "If an employer incorrectly but in good faith and non-recklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed." 507 U.S. at 616, 113 S.Ct. 1701. Here, defendant never claimed that it made a good-faith "age-based decision," making its proposed instruction inapposite.

Regardless, the actual jury instructions given adequately covered a good-faith defense by recognizing that it was "defendant's good-faith perception of plaintiff's performance that is relevant" (Jury Instruction No. 22); that defendant had "the right to make subjective business judgments and assessments concerning plaintiff's performance, so long as plaintiff's age

is not a determining factor" (Jury Instruction No. 23); and that the "ADEA is not intended to allow a jury to second guess the employer's legitimate business decisions" (Jury Instruction No. 24).

Accordingly, defendant's motion to set aside the willfulness finding as a matter of law or to grant a new trial on that issue should be denied.

### 3. Damages

■ Defendant seeks reversal of the jury's verdict on damages. Alternatively, it requests either a new trial outright or a new trial if plaintiff does not accept a remittitur or reduction of damages.[2]

■ Defendant first argues, relying upon *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir.1998), that, since plaintiff did not seek comparable work as a sales representative or prove that such work was unavailable, the jury verdict should be reversed. Regardless of whether the *Greenway* case stands for such a limited proposition, defendant in essence advocates a *per se* rule which would rule out a job change as a reasonable effort to mitigate. I decline to create such a rule and agree with other courts that efforts at a new career, which are reasonable and in good faith under the circumstances, are acceptable alternatives to finding employment similar to that lost. *Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 438 (7th Cir.1992) ("the notion that starting one's own business cannot constitute comparable employment for mitigation purposes not only lacks support in the cases, but has a distinctly un-American ring"); *Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1006 (3d Cir.1988); *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988).

■ Efforts at self-employment do "not require success, but only an honest, good-faith effort." *Smith v. Great American Restaurants, Inc.*, 969 F.2d at 438.

■ Certainly, plaintiff had the duty to make reasonable efforts to mitigate his losses. He could not simply refuse to seek comparable employment or other opportunities. *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir.1980); *Acrey v. American Sheep Industry Association*, 981 F.2d 1569, 1576 (10th Cir.1992). Nevertheless, the ultimate burden of proof of showing that plaintiff did not reasonably mitigate rests upon the defendant as employer. *Acrey*, 981 F.2d at 1576 (citing *Spulak v. K Mart Corporation*, 894 F.2d 1150, 1158 (10th Cir.1990)).

Applying those principles to this case, the jury was instructed that the defendant had the burden of proof, by a preponderance of the evidence, to show plaintiff's failure to mitigate (see Jury Instruction No. 26) and was propounded the following interrogatory: "Do you believe that defendant proved that plaintiff failed to mitigate his damages?" The jury's answer was "no."

With regard to the amount of damages, the jury's verdict of $324,900 is the precise amount of back pay or past economic loss estimated by plaintiff's expert, Dr. Jane Lillydahl, indicating the jury's judgment of her credibility.

Applying the same standards, I must decide whether there exists sufficient evidence to support the jury's verdict or whether those verdicts are clearly contrary to the weight of evidence.

■ Turning first to the mitigation issue in general, there is evidence from which a jury could reasonably conclude that plaintiff's decision to operate the coffee farm full time, at the time of his decision,[3] was a reasonable effort to mitigate, at least up to a point.

---

2. Contrary to plaintiff's suggestion, the last option does not violate the Seventh Amendment's proscription against reexamining facts decided by a jury. *Kennon v. Gilmer*, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110 (1889); *Gasperini v. Center for Humanities, Inc.*, 518

U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

3. The reasonableness of the self-employment decision must be determined as of the time of the decision and not with the benefit of 20/20

Dr. Lillydahl was asked, without objection,[4] whether plaintiff acted reasonably in the mitigation of his damages, and she indicated that he had under the circumstances. Similarly, defendant's expert, Jory Laine, agreed that mitigation efforts on the coffee farm would be reasonable if plaintiff could have reasonably anticipated to replace his income from the coffee farm.

The uncontested measuring rod for the reasonableness of mitigation efforts was plaintiff's expert's opinion that plaintiff's annual earnings while employed by defendant were $71,400 plus fringe benefits of approximately twenty percent of that amount, or a total of $85,680 a year.

At the time plaintiff made the decision to attempt mitigation by coffee farming, he had owned the coffee farm for several years and had other experiences upon which to estimate his earnings. The record indicates that Dr. Lillydahl's conclusion of reasonableness was based upon the plaintiff's estimate that he would start out making $35,000 to $45,000 a year.[5] Likewise, Mr. Laine testified that, if it were reasonable to estimate the plaintiff making $50,000 to $75,000 per annum within two or three years, coffee farming would be a reasonable effort at mitigation. It was also brought out that the cost of living in Venezuela was forty to eighty percent of that in the United States, meaning that a $40,000 income may approximate plaintiff's pre-termination earnings.

Defendant did not directly attack the reasonableness of those opinions or their factual bases, including plaintiff's earning's estimates. Defendant called no witness to challenge the estimated earnings on the coffee farm and did not cross examine

plaintiff on the issue other than to reconfirm the earnings figures given by Dr. Lillydahl for the years subsequent to termination. Mr. Laine ultimately concluded that he did not feel coffee farming was reasonable mitigation, but he also conceded that he had made no investigation, leaving his opinion but a bald conclusion which the jury apparently gave little, if any, weight.

I therefore conclude that, based upon the evidence presented to the jury, it could have reasonably inferred that the plaintiff's coffee farming attempt was acceptable mitigation *at the time of his decision.* My inquiry does not end there, however, as it should measure those expectations of mitigation against the reality of actual performance.

▮ If plaintiff's choice of self-employment proves unsuccessful, he cannot expect an ongoing subsidy from his former employer. "The ADEA must not be used as a tool for insuring a plaintiff's fledgling business while it continues to sustain losses." *Smith v. Great American Restaurants, Inc.,* 969 F.2d at 439. Indeed, the duty to mitigate is ongoing. If plaintiff's self-employment proves unsuccessful, he should resume search for other comparable employment. *Hansard v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 865 F.2d 1461, 1468 (5th Cir.1989).

Here the evidence of the performance of the plaintiff's farming business is essentially uncontested, but nevertheless, as a basis for decision making, it is barely adequate. The only evidence of the farm's earnings was some general testimony of the plaintiff on cross-examination that he had a net income of $15,000 in 1994, a net loss of

---

hindsight at some later time. This is consistent with the well-recognized rule that mitigation does not require success, but only an honest, good-faith effort. *Brooks v. Woodline Motor Freight, Inc.,* 852 F.2d at 1065; *Smith v. Great American Restaurants, Inc.,* 969 F.2d at 438.

**4.** Defendant now objects to plaintiff's expert's qualifications to render an opinion on mitigation and to the opinion itself because it allegedly dealt with the ultimate issue to be decid-

ed by the jury. Both arguments are without merit. Error cannot be predicated on evidence to which no objection was made. Rule 103(a)(1), Fed.R.Evid. Furthermore, expert opinion testimony, even on ultimate issues to be decided by the jury, is admissible. Rule 704(a), Fed.R.Evid.

**5.** Dr. Lillydahl also opined that plaintiff could have earned approximately $45,000 if he had remained in the sales business in the United States.

$1,500 in 1995 and a $2,000 net income in 1996. He expected to make $10,000 in 1997, although it was early in the year. Thus the farm income for four years, assuming plaintiff's 1997 estimate was correct, was $25,500. These numbers, which were not challenged by defendant, were adopted by Dr. Lillydahl in her opinion as an offset against her calculation of 4.09 years of income at $71,400 (prior to adding twenty percent for fringe benefits to the net loss figure). The 4.09 years reflect the fact that approximately four years and one month had elapsed between termination (March 31, 1993) and trial (May 1, 1997).

These figures are somewhat inconsistent as the expert adds a month of lost income without a corresponding offset for a month of mitigation earnings. They also ignore the 1993 earnings,[6] the first year of operation, and add an estimated income for the incomplete year of 1997. Defendant, however, did not challenge the accuracy of these numbers or assume its burden to show that plaintiff failed to mitigate. Defendant could have pursued many questions to avoid or minimize a potential windfall to plaintiff. As distinguished from salary comparisons, self-employment raises many issues which should be pursued to avoid undue benefit:

> For example: Has the plaintiff drawn a salary which has reduced, if not eliminated the year-end profit? Have personal expenses, normally paid by a wage earner from a salary been absorbed by the business, e.g. personal car expenses, insurance, vacations and other personal expenses? Have dividends been paid? Have profits been earned? Have particular expenses been appropriately offset against revenues? Have profits been reinvested in capital assets and have reserves been established? If so, how should they be treated in mitigation context. Has the plaintiff benefited by an increase in value of the business?

*Carden v. Westinghouse Electric Corporation,* 850 F.2d at 1005–1006 (doctrine of mitigation is to prevent a windfall or double recovery).

Further questions arise in the agricultural industry because an owner has the ability to avoid or defer profit recognition by various means, including deferring sales, incurring expenses at strategic times or capitalizing actual production.

These are all legitimate issues to determine whether or not the self-employed's benefits are hidden behind acceptable accounting measures. Certainly employers are given the opportunity to prove that further deductions from back-pay calculations need be made. *Teichgraeber v. Memorial Union Corporation,* 932 F.Supp. 1263, 1266 (D.Kan.1996).

The net result is that a mitigation decision, presented to the jury as reasonable because plaintiff anticipated $35,000 to $45,000 per year in income, in fact resulted in a four-year average annual income of approximately $6,375 *or less.*[7] Plaintiff provided some explanation for his failure to meet projections (principally inflation) which underscores why the reasonableness of mitigation must be measured at the time of the decision and not with hindsight. The fact remains, however, that at best plaintiff's earnings were significantly less than ten percent of his previous annual earnings. As a consequence, we have a verdict of reasonable mitigation premised on $45,000 income, allowing recovery of almost ninety-three percent[8] of the pre-

---

**6.** At the front-pay hearing plaintiff tendered his income tax returns which reported farm income for taxes as follows: 1993, $197.80; 1994, none submitted; 1995, ($1,520.71); and 1996, $1,812.98. Since these facts, or lack thereof, were not presented to the jury, they do not play a role in my decision.

**7.** The actual annual earnings could be much less. If the income or loss actually shown on tax returns had been used, there may be no income at all. If the four years included 1993 and the estimated, but unsupported testimony of $15,000 earnings in 1994, the annual average would have been only $3,872.00.

**8.** Plaintiff's testimony of a $324,900 loss was based upon 4.09 years of income at $71,400 per annum, plus twenty percent for fringe benefits. Accordingly, plaintiff's income had it continued with defendant would have been $350,400, meaning that recovery of $324,900

termination earnings, while plaintiff pursues what appears to be an unsuccessful farming venture.

I find that such a verdict is excessive and contrary to the law requiring an ongoing duty to mitigate. Given that the reasonableness of mitigation was premised on farm income of $35,000 to up to $75,000 per annum and that actual earnings were but a small fraction of those projected earnings, awarding damages for over four years on the basis of those actual earnings is simply unjust and shocks my judicial conscience, requiring a new trial or remittitur. See *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Incorp.*, 703 F.2d 1152, 1168 (10th Cir.1981).

As noted, the jury's award precisely tracks Dr. Lillydahl's testimony as to the particulars of lost earnings and dollars earned in mitigation. Defendant did not challenge those numbers.[9] Accordingly, I may order a new trial or remittitur because "the size of the verdict" does not turn "upon conflicting evidence and the credibility of witnesses," matters within the jury's exclusive province. *Cf. Palmer v. Monticello*, 31 F.3d 1499, 1508 (10th Cir.1994).

Similarly, because the verdict is based on the precise testimony of plaintiff's expert, I do not conclude that the verdict is so excessive that it raises "an irresistible inference of passion, prejudice, corruption or other improper cause invaded the trial" requiring a new trial without the option of a remittitur. See *Malandris*, 703 F.2d at 1168.

Since I find that the verdict was not so tainted, I may, in my discretion, order a remittitur. *Id.; Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560 (10th Cir.1991); *Blair*

v. *Eagle–Picher Industries, Inc.*, 962 F.2d 1492, 1499 (10th Cir.1992).

In deciding the amount of the remittitur, three difference approaches have been used:

- Lowest amount of damages supported by the record ("minimum recovery" rule);
- Highest legal amount of damages supported by the record ("maximum recovery" rule);
- Amount the court deems reasonable.

*Moores Federal Practice*, 3d Ed., § 59.13[2][g][D].

I tend toward the latter, but there is at least a suggestion that the Tenth Circuit uses the "maximum recovery" standard. See *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148, 1163 (10th Cir.1985)(facts of that particular case were considered to require "maximum amount of damages that is reasonably supported by the evidence in the record"). Under the circumstances of this case I do not believe there is a bright line to distinguish a reasonable recovery from a "maximum recovery."

In my opinion the determination of the maximum, as well as the reasonable, recovery is necessarily linked to the ongoing duty of mitigation. I conclude that after two and one-half years [10] of extremely low earnings, plaintiff's farming enterprise was demonstrably unsuccessful, and his duty to mitigate damages required that he renew his search for comparable employment, which both experts concluded was available. *Smith v. Great American Restaurants, Inc.*, 969 F.2d at 439; *Hansard v. Pepsi–Cola Metropolitan Bottling Co., Inc.*, 865 F.2d at 1468.

---

provides him 92.7 percent of what his income would have been.

**9.** Defendant's expert did not challenge Dr. Lillydahl's calculations, and he himself did not render an opinion on damages other than indirectly by opining that it should have taken plaintiff only about three months to find comparable work.

**10.** This allows for completion of the 1993 crop year and the full years of 1994 and 1995 or 30 months to demonstrate unlikely success. The *Smith* court allowed the plaintiff there 34 months, although her revenues were increasing. 969 F.2d at 439.

Using the uncontested methodology of Dr. Lillydahl, two and one-half years of damages are computed as follows:

| | |
|---|---:|
| Two and one-half years annual income of $71,400 = | $178,500 |
| Less mitigation 1993, 1994 & 1995 ($200 + $15,000 less $1,500) [11] = | (13,700) |
| | 164,800 |
| Fringe benefits (20% of $164,800) = | 32,960 |
| | 197,760 |
| Liquidated damages multiplier | ×2 |
| TOTAL: | $395,520 |

Accordingly, plaintiff shall be required to elect between a remittitur reducing the damage award against defendant to $395,-520 or a new trial on the issue of damages. If plaintiff accepts remittitur, the verdict, as adjusted, will be affirmed.

A new trial on damages, if elected, shall include the issue of mitigation, which, in the oft-used phrase, is "inextricably intertwined" with the damage issue.[12] The new trial will be presented to the jury as a case where the defendant's liability for willful age discrimination is established as a matter of law, but the amount of damages, including the reasonableness of the defendant's mitigation efforts, shall be tried anew.

It is therefore ordered as follows:

1. Defendant's motion to reverse the verdict on liability or order a new trial on that issue is denied.

2. Defendant's motion to reverse the verdict on willfulness or order a new trial on that issue is denied.

3. Defendant's motion for a new trial or for remittitur is granted. Plaintiff shall elect by written pleading, filed on or before December 18, 1998, either a remittitur of damages to reduce the judgment to $395,520 [13] or a new trial limited to the issue of damages, including mitigation. If plaintiff elects remittitur, judgment shall enter in that amount.

4. The reasons stated herein are additional reasons for my previous oral orders denying front-pay and prejudgment interest while granting liquidated damages.

---

11. No evidence of 1993 income was presented at trial. At the front-pay hearing plaintiff's income tax return indicated $197.80 income. See footnote 6. I have rounded all figures to the nearest $100.

12. I am aware that plaintiff might argue the proscription against a new trial where the size of the verdict is based upon conflicting evidence (*Palmer v. City of Monticello*) since defendant's expert opined, albeit as a bald conclusion, that plaintiff's mitigation efforts were not reasonable. I conclude that the *Palmer* rule does not apply here because there

is no real dispute between the experts if one accepts the premise that plaintiff could have made $35,000 to $45,000. Any difference of opinion created by Laine's testimony is really unsupported opinion since he did not investigate the reasonableness of the plaintiff's projections. Application of *Palmer* to prevent relitigation of the reasonableness of mitigation in a damage trial is not appropriate where, as here, the actual damage calculation was not disputed.

13. The judgment of $395,520 includes the doubling based on willfulness.