**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

and

**Edna Johnson, Plaintiff–Intervenor,**

v.

**ACCURATE MECHANICAL CONTRACTORS, INC.,**
Defendant.

No. 93–C–1006.

United States District Court, E.D. Wisconsin.

Sept. 8, 1994.

Jeanette Goss, Milwaukee, WI, for E.E.O.C.

Arthur Heitzer, Milwaukee, WI, for Edna Johnson.

Menn, Nelson, Sharratt, Teetaert & Beisenstein by Jack Teetaert, Appleton, WI, for defendant.

## DECISION and ORDER

### MYRON L. GORDON, District Judge.

A four-day bench trial was held in the above entitled matter beginning on June 20, 1994. At the close of the trial, the court made findings of fact and conclusions of law, ruling that the plaintiff-intervenor ["intervenor"], Edna Johnson, had met her burden of proof and was entitled to judgment. On the basis of the facts adduced at trial, I found that the defendant, Accurate Mechanical Contractors ["Accurate"], had discriminated against Mrs. Johnson on the basis of sex, in violation of 42 U.S.C. §§ 2000e *et seq.*

Three matters remain for the court's resolution: first, the court is to determine the amount to which the plaintiffs are entitled, pursuant to this court's June 2, 1994, order granting the plaintiffs just costs and reasonable attorney's fees in connection with their motion to compel discovery; second, the court should determine the damages to which Mrs. Johnson is entitled; finally, the court must decide the amount that Mrs. Johnson is entitled to recover as attorney's fees pursuant to 42 U.S.C. § 2000e–5(k).

## I. BACKGROUND

On September 16, 1993, plaintiff Equal Employment Opportunity Commission ["EEOC"] filed a complaint alleging that Accurate had engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e *et seq.* The EEOC's complaint stated that it commenced this action to "correct unlawful employment practices on the basis of sex and to make whole Edna Johnson."

On September 28, 1993, Mrs. Johnson filed a motion to intervene as plaintiff, and she also filed a complaint in intervention. This court granted that motion in a November 16, 1993, decision and order.

In their complaints, the plaintiffs charged that Mrs. Johnson, a pipefitter, was denied employment by the defendant on the basis of her sex. Specifically, Mrs. Johnson's complaint alleged that her name was referred to Accurate for employment at a Niagara, Wisconsin, job site, along with the names of five other pipefitters. The referral was made by Local 506, a local affiliate of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, pursuant to a contractual arrangement that the union had with Accurate. Mrs. Johnson alleged that Accurate refused to employ her at the Niagara job site on the basis of her sex.

The case against Accurate was consolidated with case number 93–C–342, an action brought against Local 786 which arose out the same event that is the subject of this litigation. However, Mrs. Johnson settled the case against Local 786 shortly before trial. Thus, the only issues that remained for resolution at the trial which commenced on June 20, 1994, were those relating to the action against Accurate.

At the close of the trial the court made its findings. The following are a few of the pieces of evidence which tended to support the finding of discrimination: (1) upon being supplied by Local 506 with the name of Mrs. Johnson as one of the recommended pipefitters for the Niagara "shutdown," Mr. Collins, Accurate's supervisor at the Niagara job site, declared "No fucking way"; (2) Mr. Collins said that Mrs. Johnson would be called for work beginning subsequently on the day shift on Wednesday, January 16, 1991, but in fact she was never offered such employment; and (3) Mr. Kurtz, the union steward for Local 786, said that Mrs. Johnson received "a raw deal."

## II. ATTORNEY'S FEES FOR MOTION TO COMPEL

On June 2, 1994, this court issued a decision and order compelling discovery by the defendant. The order expressly required the defendant to pay just costs and reasonable attorney's fees incurred by the plaintiffs in

connection with the motion to compel. The court found that the defendant was not substantially justified in its refusal to respond to certain of the plaintiffs' interrogatories, and, therefore, under Rule 37(a), Federal Rules of Civil Procedure, the plaintiffs were entitled to recover costs and attorney's fees for having been obliged to bring a motion to compel.

In its June 2, 1994, decision and order, the court directed the EEOC and Mrs. Johnson to submit statements of just costs and reasonable attorney's fees. In response, the EEOC filed a statement seeking $3,520.00 in attorney's fees in connection with the motion to compel. Intervenor Edna Johnson requested $1,585.00 in attorney's fees in connection with the motion to compel. .

■ Under Rule 37(a)(4), upon granting a motion to compel, the court may award the movant reasonable expenses incurred in bringing the motion. The court must determine whether the amounts sought are reasonable. In a related context, the Supreme Court has held that an award of attorney's fees under the fee-shifting provisions of the civil rights statutes should begin with a calculation of the hours reasonably expended at a reasonable hourly rate. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). An award of fees under Rule 37(a)(4) is not identical to an award under the civil rights statutes, as the motive behind each award may differ. However, the rationale used to calculate fee awards in civil rights cases can be helpful in calculating awards under Rule 37(a)(4).

Mrs. Johnson's counsel claims that 11 hours were expended in connection with the motion to compel. This consisted of 7.5 hours, at a rate of $160 per hour, by lead counsel Arthur Heitzer, and 3.5 hours, at a rate of $110 per hour, by Mr. Heitzer's associate, Jeffrey Kingsley. Mr. Heitzer, in his affidavit, attests that the rates requested are the standard hourly rates of both him and Mr. Kingsley.

■ The attorney's standard hourly rate is the best measure of the attorney's reasonable hourly rate. *See Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993). The standard rates sought by both of Mrs.

Johnson's counsel are reasonable. Mr. Heitzer's affidavit accompanying his fee application reveals that he is a 1969 law school graduate who has been involved in the field of employment law throughout his career as an attorney. Mr. Heitzer has been in private practice in Wisconsin since June, 1975, and he has had extensive experience in employment discrimination litigation.

Mr. Heitzer's affidavit also reveals that his associate, Mr. Kingsley, is a 1990 law school graduate. Mr. Kingsley worked for a firm specializing in employment law while he was in law school. Mr. Kingsley was employed as a judicial clerk in Minnesota, and he has been working with Mr. Heitzer since November 1992.

Mrs. Johnson's counsel has provided a detailed breakdown of the hours expended in bringing the motion to compel and, upon review, the court is persuaded that these hours were reasonably expended in bringing the motion. Therefore, Mrs. Johnson is entitled to $1585 in costs and attorney's fees in connection with the motion to compel.

■ The EEOC seeks compensation at the rate of $160 per hour, for time expended in bringing the motion to compel. The EEOC, in its fee statement, states that senior trial attorney Jeanette Goss was admitted to the practice of law in May 1981, and she has practiced exclusively in the employment discrimination field as an employee of the EEOC since June 1985. In addition, the EEOC avers that supervisory trial attorney Dennis McBride has been admitted to practice law since September 1980 and that he has practiced exclusively in the employment discrimination field as an employee of the EEOC since September 1991. Based on the experience listed above, the court holds that the request for a $160 per hour rate for Ms. Goss and Mr. McBride is reasonable.

■ The EEOC, in its fee statement, also claims that Ms. Goss expended 21 hours in preparing the motion to compel and related documents, with an additional hour spent by Mr. McBride reviewing Ms. Goss's work. The court finds that 22 hours is an unreasonably large amount of time to have been spent by two experienced attorneys in bringing a

motion lacking highly complex legal issues; this is especially true in light of the fact that the motion was a *joint* motion to compel, and Ms. Goss presumably had the assistance of Mrs. Johnson's counsel in the preparation and filing of the motion.

It is clear that Mr. Heitzer was lead counsel throughout the life of the lawsuit. The number of hours of compensation to be awarded to the EEOC in connection with the motion to compel will be reduced to five hours. The EEOC is thus entitled to $800 in attorney's fees and costs in connection with the motion to compel.

## III. DAMAGES

The court must determine the amount of damages to be awarded to Mrs. Johnson. Both parties have submitted briefs on the issue of damages. The intervenor seeks $5,580.65, plus $1,696.04 interest, totaling $7,276.69, as remuneration for earnings she alleges she would have received for work done at the Niagara job site, absent the defendant's discrimination. Mrs. Johnson also seeks an additional $2,200.00, claiming that there was a "reasonable potential that she would have been reemployed by Accurate." Finally, Mrs. Johnson requests that the court issue an injunction prohibiting the defendant from "further discrimination in the hiring of women in the unionized trades."

## A. BACKPAY

The court is authorized to award equitable relief, including backpay, to the intervenor, pursuant to 42 U.S.C. § 2000e–5(g)(1), where the defendant has intentionally engaged in unlawful employment practices. The term "intentionally engaged" means that the employer acted deliberately, rather than accidentally. *Williams v. General Foods Corp.,* 492 F.2d 399, 406 (7th Cir.1974). Accurate's conduct in this case was certainly deliberate, rather than accidental. Thus, I conclude that the plaintiff-intervenor is entitled to recover backpay under § 2000e–5(g)(1).

The purpose of Title VII is to make persons whole for injuries that result from unlawful employment discrimination.

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1974). In the absence of special factors, backpay should be awarded when a Title VII violation is found. *Stewart v. General Motors Corp.,* 542 F.2d 445, 451 (7th Cir.1976), *cert. denied* 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977). Special factors prohibiting the award of backpay normally include only circumstances where state legislation is in conflict with Title VII. *Id.* No "special factors" are present in this case, and the court concludes that Mr. Johnson is entitled to receive backpay as compensation for the defendant's deliberate discriminatory conduct.

The more difficult question for resolution is the amount of backpay which should be awarded to Mrs. Johnson. She asserts that she should be awarded backpay for the period from January 14, 1991, to January 29, 1991, as that was the period worked by the two pipefitters hired on January 14, 1991, who were the last to be terminated from the Niagara plant shutdown.

The defendant argues that Mrs. Johnson should be awarded backpay only for the day of January 14, 1991, as she was subsequently offered employment on the night shift by Accurate beginning on January 15, 1991. Therefore, the defendant argues, Mrs. Johnson failed to take advantage of the opportunity to mitigate her damages, and she should be compensated only for the one day on which she was refused any employment.

In the absence of special circumstances, the accrual of backpay liability is tolled when a Title VII claimant rejects an offer of the job that he originally sought. *Ford Motor Co. v. EEOC,* 458 U.S. 219, 238–239, 102 S.Ct. 3057, 3069–3070, 73 L.Ed.2d 721 (1981). However, an offer of reinstatement tolls the accrual of backpay only if it " 'affords the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status.' " *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1203 (7th Cir.1989) (quoting *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983)). Thus, it is important to determine whether the night shift position was equivalent to the

day shift job that Mrs. Johnson originally expected with Accurate.

■ Some aspects of the night shift are the same as those of the day shift, and some aspects are even better; for example, Mrs. Johnson would have received a 15% premium for working the night shift. Nevertheless, the plaintiffs presented impressive evidence that the working conditions on the night shift were far worse than those on the day shift. There was credible evidence received to demonstrate that night shift workers are required to do more work with less supervision, and that the night shift is statistically more dangerous than the day shift. Thus, the court concludes that a night shift position would not have been identical to the day shift position which had been illegally denied to Mrs. Johnson. It follows that Accurate's offer of night shift employment did not toll the accrual of backpay.

■ The defendant also contends that Mrs. Johnson's refusal of the night shift offer was unreasonable. Only an unreasonable refusal of a job offer tolls the accrual of damages. *Graefenhain,* 870 F.2d at 1203. Mrs. Johnson's husband, also a pipefitter, testified that he was told by Mr. Collins, Accurate's supervisor at the Niagara job site, that the intervenor would be offered day shift work beginning on January 16, 1991. However, Mrs. Johnson was never in fact offered such a day shift position. I conclude that Mrs. Johnson's refusal of the night shift position was reasonable, especially since the defendant had led her to believe that an offer for employment on the day shift was forthcoming.

What is the period of time for which backpay should be awarded? The intervenor contends that she should be awarded an amount commensurate with the amount received by those pipefitters who began work on January 14, 1991, and worked the longest period of time on the Niagara plant shutdown. This would encompass the days from January 14, 1991, to January 29, 1991. The defendant argues that it is not reasonable to award backpay for this entire period because of all the six pipefitters hired on January 14, 1991, only two worked until January 29, 1991.

■ In calculating a backpay award, "unrealistic exactitude is not required." *Stewart,* 542 F.2d at 452. Ambiguities in what an employee would have earned but for discriminatory conduct should be resolved against the employer. *Id.; Woolridge v. Marlene Industries Corp.,* 875 F.2d 540, 549 (6th Cir. 1989). There are a few uncertainties in the calculation of Mrs. Johnson's backpay award, and they will be resolved against Accurate.

■ Of the six pipefitters hired on January 14, 1991, only two worked until January 29, 1991. Two others worked until January 27, 1991, and two others were terminated from the Niagara job site prior to January 27, 1991. There is an element of uncertainty as to how long Mrs. Johnson would have worked on the Niagara job site absent the defendant's unlawful discrimination. Since it is possible that she could have worked until January 29, 1991, this uncertainty will be resolved against Accurate, and she will be awarded backpay for the period from January 14, 1991, to January 29, 1991.

The number of hours worked on each of these days is shown on the time sheets for the Niagara shutdown, which were submitted as exhibits by the plaintiffs at trial. (Plaintiffs' exhibit 45) The time sheets indicate that the day shift pipefitters on the Niagara shutdown generally worked 12–hour shifts on Monday through Friday, January 14 to January 18, 1991, and 10–hour shifts on Saturday and Sunday, January 19 to January 20, 1991, through the first week. During the second week the average day shift pipefitter worked 12–hour shifts Monday through Friday, January 21 to January 25, 1991, and 12–hour shifts on Saturday and Sunday, January 26 to January 27, 1991. On the final two days of the job, January 28 and January 29, 1991, the average day shift pipefitter worked 12 and 8 hours respectively.

Calculating the total wages for this period using the figure of $23.35 per hour, which is the rate contained in the collective bargaining agreement existing between the union and Accurate at the time of the discrimination, the total figure for backpay from the Niagara job site amounts to $5580.65. Accurate apparently does not dispute the use of

the $23.35 per hour figure, as it used that same figure in calculating the amount to which it thought Mrs. Johnson was entitled for the day of January 14, 1991. The total figure of $5580.65 includes hours calculated at the overtime and double time rates as set forth in plaintiffs' exhibit 63.

The $23.35 per hour figure also includes fringe benefits, which the defendant, apparently does not contest. Backpay awards under Title VII should include fringe benefits that the claimant would have received absent the employer's discrimination. *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983), *cert. denied* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). The court finds that it is appropriate to include fringe benefits in the calculation of the backpay award as Mrs. Johnson would have received those amounts but for Accurate's discriminatory conduct.

The plaintiff-intervenor further requests an award of $2,200 for "callback work"; this is work that she would (potentially) have received from Accurate prior to June 13, 1991, when she obtained other employment. The district court possesses considerable discretion in calculating damages. *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir.1986).

Exhibits received at trial show that two of the pipefitters hired by Accurate beginning on January 14, 1991, were called back for work within the next several months. (Plaintiff's exhibits 71 and 72). Plaintiff's exhibits also show that two other persons called for work at the Niagara shutdown were later called back for further employment with Accurate. (Plaintiff's exhibits 68 and 69). There was evidence that persons who had previously worked for Accurate were given priority on recalls. Therefore, Mrs. Johnson contends, it is reasonable to assume that she would have been recalled to work for Accurate in the months preceding June 13, 1991.

Possible callback employment is simply too speculative on the record in this case to be the basis for an award of backpay. While it is true that uncertainties in the calculation of the backpay period should be resolved against the employer, the backpay award that Mrs. Johnson seeks for recall work is outside of the realm of uncertainty and into the realm of mere speculation. The court will exercise its discretion as to this portion of damages to deny Mrs. Johnson any recovery for callback work.

Mrs. Johnson also requests that she be awarded interest on her backpay award in the amount of $1,696.04. The Supreme Court has said that prejudgment interest is a normal incident of backpay awards in Title VII cases. *Loeffler v. Frank*, 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988). The decision of whether to grant or deny prejudgment interest is dependant upon "whether the amount of damages is easily ascertainable." *Donnelly v. Yellow Freight Systems, Inc.*, 874 F.2d 402, 411 (7th Cir.1989), *aff'd* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

Mrs. Johnson's damages were not readily ascertainable. While the determination of her hourly rate of pay was easily ascertained, calculating the period for which she was entitled to backpay involved a subjective estimate as to the number of days that she would have worked for Accurate at the Niagara job site absent the discriminatory conduct. The grant or denial of prejudgment interest lies within the discretion of the district court, *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 787 (7th Cir.1979), and the court will exercise its discretion in this case to deny prejudgment interest.

## B. INJUNCTION

Mrs. Johnson has also requested that an injunction be issued prohibiting Accurate from engaging in further discrimination against women in the unionized trades. The court is permitted to grant injunctive relief pursuant to 42 U.S.C. § 2000e–5(g)(1) upon finding that the defendant has intentionally engaged in unlawful employment practices.

The decision whether to provide injunctive relief hinges on a balance of the equities between the parties, and the result should be consistent with the purposes of Title VII and "fundamental concepts of fair-

**838**

ness." *Kamberos v. GTE Automatic Elec., Inc.,* 603 F.2d 598, 603 (7th Cir.1979) (citation omitted). The primary objective of Title VII is "to bring employment discrimination to an end." *Ford Motor Co., supra,* 458 U.S. at 228, 102 S.Ct. at 3063 (citation omitted).

■ With stubborn steadfastness, Accurate has persisted in its denial that it engaged in any discriminatory conduct. Furthermore, one of the prime perpetrators of the discriminatory conduct, Mr. Collins, remains in a supervisory position at Accurate. The likelihood that discriminatory conduct could occur in the future supports the imposition of injunctive relief. *See EEOC v. Gurnee Inn Corp.,* 914 F.2d 815, 817 (7th Cir.1990). On the basis of the lopsided proof of Accurate's intentional discriminatory acts, and the possibility that the defendant will engage in discriminatory conduct in the future, I conclude that Mrs. Johnson should be granted injunctive relief.

## IV. ATTORNEY'S FEES UNDER 42 U.S.C. § 2000e–5(k)

■ Mrs. Johnson has also requested an award of attorney's fees pursuant to 42 U.S.C. § 2000e–5(k). Under that provision, the court may, in its discretion, award attorney's fees to the prevailing party in an action brought under this section. A prevailing plaintiff ordinarily is entitled to attorney's fees under § 2000e–5(k) in all but special circumstances. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). No special circumstances justifying the denial of an attorney's fee award are present in this case.

■ A plaintiff is considered a "prevailing party" for attorney's fees purposes if he succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978)). Mrs. Johnson has succeeded in the primary issue litigated in this case by proving with cogent evidence that Accurate discriminated against her in employment on the basis of her sex; she is clearly a prevail-

ing party entitled to attorney's fees under 42 U.S.C. § 2000e–5(k).

■ The fee shifting provisions of § 2000e–5(k) have been construed to be identical to those under 42 U.S.C. § 1988. Thus, cases construing both provisions can be considered in determining the reasonableness of an attorney's fee award. *In re Burlington Northern, Emp. Practices Lit.,* 832 F.2d 422, 424 (7th Cir.1987).

■ The starting point in the determination of a reasonable fee is a calculation of "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The figure computed using this method is termed the "lodestar." *Eddleman v. Switchcraft, Inc.,* 927 F.2d 316, 318 (7th Cir.1991). The lodestar figure is presumed to be a reasonable fee award. *Graham v. Sauk Prairie Police Comm'n,* 915 F.2d 1085, 1109 (7th Cir.1990). However, the court should exclude from this initial fee calculation hours that were not reasonably expended. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. The factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974), may be considered in this initial calculation. *See, Id.* n. 9. These factors include the time and labor required, the novelty of the issues, the skill required in providing the services, the complexity of the case, the customary fee, the ability of the attorneys and the awards received in similar cases. *Id.,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3.

■ Earlier in this decision, in considering the request for attorney's fees in connection with the motion to compel, I found that the hourly rates sought by Mrs. Johnson's counsel were reasonable. Additionally, in her request for attorney's fees under § 2000e–5(k), the intervenor has sought remuneration for time expended by paralegal Mary Rose Wallus at the rate of $25 per hour. The "reasonable attorney's fee" provided for by statute should compensate for the work of paralegals as well as attorneys. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1988); *See Cameo Convalescent Center, Inc. v. Senn,*

738 F.2d 836, 846 (7th Cir.1984), *cert. denied* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). However, compensation should be limited to work performed by the paralegal that would otherwise be done by an attorney. *Jones v. Armstrong Cork Co.,* 630 F.2d 324, 325 n. 1 (5th Cir.1980). From Mr. Heitzer's affidavit, it appears that the work performed by Ms. Wallus was clerical work, not legal work. Therefore, I conclude that the hours claimed for the work of Ms. Wallus are not compensable.

The court must also determine whether the hours claimed in Mrs. Johnson's fee application were "reasonably expended" in this litigation. Mrs. Johnson has sought remuneration for attorney's fees and costs in the amount of $56,693.62. However, my addition of the figures provided in the intervenor's affidavit shows that she has made an arithmetical error in calculating the amount requested; the correct amount is larger: $56,730.47. The amount claimed by Mrs. Johnson is broken down as follows:

| | |
|---|---:|
| Mr. Heitzer, 279.85 hours at $160/hour | $44,776.00 |
| Mr. Kingsley, 90.95 hours at $110/hour | 10,004.50 |
| Ms. Wallus, 11.95 hours at $25/hour | 298.75 |
| Costs | 1,651.22 |
| Total requested | $56,730.47 |

However, both the amount awarded in connection with the motion to compel and the amount sought for the work of Ms. Wallus must be deducted. Furthermore, the amount requested as costs will not be considered in calculating the reasonable attorney's fee. This leaves the total amount at $53,204.50 as set forth below:

| | |
|---|---:|
| Total from above | $56,730.47 |
| Less amount awarded in connection with the motion to compel | 1,585.00 |
| Less amount claimed for work of Ms. Wallus | 289.75 |
| Less amount claimed as costs | 1,651.22 |
| Total | $53,204.50 |

This figure ($53,204.50) will be used as the starting point in my calculation of the reasonable attorney's fee to be awarded to Mrs. Johnson.

Mrs. Johnson's attorneys have provided the court with a detailed accounting of the time that they claim was expended during the course of this litigation. Mr. Heitzer asserts that he has exercised billing discretion in deducting slightly over $11,000 for time he feels is attributable to the related union case and in deducting 50% of the time claimed for Mr. Kingsley's trial preparation and participation on the days of the trial. However, I have reviewed the accounting, and I find that not all of the hours claimed were reasonably expended. Therefore, the requested amount will be reduced as set forth below, resulting in a total award of $38,345.00.

 The defendant makes a number of general arguments for a reduction of the fees requested. The defendant claims that the attorney's fees requested are excessive when compared to Mrs. Johnson's compensatory damages. Although the amount of damages a plaintiff recovers is relevant to an award of attorney's fees for that recovery, the size of the award does not dictate that the attorney's fee allowed must be proportional to the damage award. *Eddleman,* 927 F.2d at 316. The amount of a plaintiff's recovery is merely a factor to be considered in the calculation of attorney's fees. The court concludes that the relatively small monetary award obtained by Mrs. Johnson is not a valid basis for a reduction in her attorney's fees.

 The defendant next argues that the expenditure of time claimed by the intervenor's attorneys is not reasonable given the lack of complex legal issues involved in this case. In my opinion, the amount claimed by Mrs. Johnson's counsel is excessive due to the factors outlined below.

This case was a joint effort with the EEOC. To claim that over 380 hours of work went into a case that involved no pretrial motions, other than the motion to compel (the compensation for which has already been determined) and a three-day bench trial, is excessive. Mr. Heitzer claims that since the defendant chose to contest every aspect of the case, the large expenditure of time was justified. However, as stated above, the defendant's resistance did not result in the expenditure of significant time on pretrial motions. Based on the participation of the EEOC and the lack of significant pretrial motions, I believe that the time and

labor required in this case should not amount to as much as 380 hours.

The amount of attorney's fees claimed is also excessive due to the relative simplicity of the issues involved in this case. The novelty and difficulty of the case is one of the factors that the court may consider in determining the lodestar figure. *Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3. Resolution of the case came down primarily to an assessment of the sufficiency of the evidence and the credibility of the witnesses. This is an additional factor warranting a reduction in the number of hours claimed by Mrs. Johnson's counsel.

■ Mrs. Johnson claims that she has vindicated an important public policy in this action, and therefore, a large award of attorney's fees is justified. The "unquantifiable value" of a successful civil rights suit can indeed be a factor in determining the reasonableness of a civil rights attorney's fees award. *See Starks v. George Court Company, Inc.*, 937 F.2d 311, 316 (7th Cir.1991). Nevertheless, this does not warrant the disproportionately large attorney's fee award requested in this case.

The defendant also makes a number of arguments requesting reductions in the number of hours claimed for specific tasks performed by Mrs. Johnson's counsel during the course of this litigation. The defendant argues that: (1) billing charges for office conferences between Mr. Heitzer and Mr. Kingsley are redundant; (2) charges for the deposition preparation of Mrs. Johnson and her husband in the amount of 6.5 hours are excessive; (3) the 43 hours spent in conducting and preparing for depositions during the week of April 24, 1994, to April 28, 1994, are excessive; (4) fees already recovered in connection with the motion to compel should be deducted; (5) 3.5 hours billed for time spent on a motion to quash discovery on June 11 and 12, 1994, are more properly attributable to the union case; (6) 94 hours for preparation and participation in the trial from June 17, 1994, to June 23, 1994, are excessive; (7) the claim for 28.25 hours of time on the issue of the intervenor's remedies is excessive; and (8) the retainer agreement between Mrs.

Johnson and her counsel should be applied to reduce attorney's fees.

As stated earlier, the fees awarded to Mrs. Johnson in connection with the motion to compel have been excluded from the attorney's fee award under 42 U.S.C. § 2000e–5(k). The court has considered all of the contentions advanced by the defendant and recited above. Without further discussion, I hold that a 30% reduction in the attorney's fees sought by Mrs. Johnson adequately addresses all of the defendant's concerns.

I conclude that the hours claimed by the intervenor should be reduced by 30% to obtain the number of hours reasonably expended in this litigation. A 30% reduction in the number of hours claimed by Mrs. Johnson's counsel results in the following breakdown of compensable hours:

| | | |
|---|---|---|
| Mr. Heitzer – 195.89 hours × $160 = | | $31,342.40 |
| Mr. Kingsley – 63.66 hours × $110 = | | 7,002.60 |
| | | $38,345.00 |

Therefore, Mrs. Johnson is entitled to $38,345.00 as reasonable attorney's fees pursuant to 42 U.S.C. § 2000e–5(k).

### ORDER

Therefore, IT IS ORDERED that the plaintiff, EEOC, be and hereby is awarded $800.00 as attorney's fees from the defendant, Accurate Mechanical Contractors, Inc., in connection with the motion to compel.

IT IS ALSO ORDERED that the plaintiff-intervenor, Edna Johnson, be and hereby is awarded $1585.00 as attorney's fees from the defendant, Accurate Mechanical Contractors, Inc., in connection with the motion to compel.

IT IS FURTHER ORDERED that the plaintiff-intervenor, Edna Johnson, be and hereby is awarded $5,580.65 as backpay from the defendant, Accurate Mechanical Contractors, Inc.

IT IS FURTHER ORDERED that the defendant, Accurate Mechanical Contractors, Inc., be and hereby is permanently enjoined from discriminating against the employment of women by failing or refusing to hire such individuals on the basis of sex.

IT IS FURTHER ORDERED that the plaintiff-intervenor, Edna Johnson, be and hereby is awarded $38,345.00 as attorney's

fees pursuant to 42 U.S.C. § 2000e–5(k) from the defendant, Accurate Mechanical Contractors, Inc.

IT IS FURTHER ORDERED that the plaintiff-intervenor, Edna Johnson, be and hereby is entitled to an award of costs in the amount of $1651.22 from the defendant, Accurate Mechanical Contractors, Inc.