**Greta L. HUTCHISON, Plaintiff–
Appellee, Cross–Appellant,**

v.

**AMATEUR ELECTRONIC SUPPLY,
INC., and Terry Sterman, Defendants–
Appellants, Cross–Appellees.**

Nos. 94–1733, 94–1778.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1994.

Decided Dec. 5, 1994.

Arthur Heitzer (argued), Jeffrey A. Kingsley, Milwaukee, WI, for plaintiff-appellant.

Daniel W. Stevens (argued), Esser, Dieterich & Stevens, Menomonee Falls, WI, for defendants-appellees.

Gwendolyn Young Reams, James R. Neely, Jr., Robert J. Gregory (argued), Lorraine

C. Davis, E.E.O.C., Office of Gen. Counsel, Washington, DC, for amicus curiae E.E.O.C.

Jeff S. Olson, Fox & Fox, Madison, WI, for amicus curiae Wisconsin Employment Lawyers Ass'n and American Civil Liberties Union of Wisconsin Foundation, Inc.

Before CUMMINGS, ESCHBACH and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

A jury awarded Greta Hutchison $80,000 in back pay from defendants on her claims of sexual harassment and retaliatory discharge. The district court denied Ms. Hutchison's request for a new trial on damages as well as her requests for reinstatement and prejudgment interest and awarded her $67,538.88 in attorneys' fees from defendants as well as $80,000 on the jury's award. Defendants challenge the sufficiency of the evidence supporting the jury's finding of a hostile environment. Plaintiff cross-appeals the denials of a new trial on damages, reinstatement, and prejudgment interest as well as the amount of attorneys' fees.[1]

## BACKGROUND

Ms. Hutchison began work at Amateur Electronic Supply, Inc. ("AES") as a file clerk in 1968. By the time of her termination in 1989 she had progressed to office manager. While she enjoyed her job and the increasing responsibility she received, the working environment was less than ideal. Ms. Hutchison encountered a formidable obstacle to her professional contentment in the person of Terry Sterman, the owner and president of AES. Sterman regularly quizzed female employees about the frequency and nature of their sexual relations. He also engaged in numerous sexually explicit telephone conversations with his brother, leaving his office door open to ensure that Ms. Hutchison and the other primarily female office workers would overhear his salacious comments. When Ms. Hutchison complained to Sterman on behalf of the office

1. The Equal Employment Opportunity Commission filed an *amicus* brief in support of plaintiff. The Wisconsin Employment Lawyers Association and American Civil Liberties Union of Wisconsin Foundation, Inc. filed an *amicus* brief seeking reversal and remand as to the district court's reduction of plaintiff's attorneys' fees.

staff, he refused to stop the offensively loud conversations.

Sterman engaged in more egregious behavior as well. He referred to Peggy Peters, one of Ms. Hutchison's supervisees, as "Ms. Boobs," both to her face and to others including manufacturer representatives from outside the company, and told Ms. Hutchison that Ms. Peters did not have to work and that he kept her on staff strictly because of her looks. When Ms. Hutchison confronted Sterman about these statements and Ms. Peters' lack of production, he responded "that if he ever fired Peggy, he would hire someone just like her. He said that once we moved to our new headquarters ... the company would buy her sexy outfits to wear" (Pl.Br. 6). Sterman went on to "console" Ms. Hutchison, telling her that he had taken a survey of the salesmen and found that they would rather date her than Peggy Peters.

Sterman also commented regularly on Ms. Hutchison's appearance, telling her "I like the way you look today" while looking her up and down. When Ms. Hutchison objected to these comments, Sterman responded by commenting more frequently and in front of male employees, often prefacing his remarks with "I know you don't like this but ..." (Pl.Br. 7).

Sterman frequently attempted physical contact with Ms. Hutchison and other female employees. Several times a week he approached Ms. Hutchison at her desk, brushing against her and pinning her in, and saying in response to her inquiry "I'm just watching you." Def.Br. 8. He would also partially block his female employees' way through the office, forcing them to brush against him or take detours to avoid contact.

Sterman announced his intention to fire Ms. Hutchison in October 1989 and in November 1989 hired a replacement. On December 22, 1989, the last working day before Christmas, he told Ms. Hutchison to "punch out."

Ms. Hutchison brought the instant suit on December 23, 1991, claiming that she was (1) discriminatorily terminated on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq., (2) discriminatorily terminated on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., (3) sexually harassed in violation of Title VII, and (4) terminated in retaliation for her opposition to Sterman's harassing behavior in violation of Title VII. The case was tried to a jury beginning on September 13, 1993.[2] On September 17, 1993, the jury returned a special verdict finding for Ms. Hutchison on her claims of sexual harassment and retaliatory firing and awarding her $80,000 in back pay from defendants.

Defendants now appeal the trial court's denial of their renewed motion for judgment as a matter of law. Plaintiff Ms. Hutchison cross-appeals the district court's denial of her motion for a new trial on the issue of damages, denial of her motion for reinstatement and prejudgment interest, and the amount of attorneys' fees awarded.

## DISCUSSION

### I. Appeal

 Defendants challenge the sufficiency of the evidence supporting the jury's verdict finding a hostile environment. In reviewing this claim we are limited to determining "whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the [plaintiff]." E.E.O.C. v. Century Broadcasting Corp., 957 F.2d 1446, 1457 (7th Cir.1992). We "are particularly careful in employment discrimination cases to avoid supplanting our view of the credibility of the evidence for that of both the jury (in its verdict) and the judge (in not interfering with the verdict)." Hybert v. Hearst Corp., 900 F.2d 1050, 1054 (7th Cir.1990).

---

**2.** The case was tried to a jury under the trial judge's mistaken belief that the Civil Rights Act of 1991 applied retroactively. See Hutchison v. Amateur Electronics Supply, Inc., 840 F.Supp. 612, 618 (E.D.Wis.1993). The parties and the district court are now treating the use of the jury as consensual. Since no one contests this after-the-fact characterization on appeal, we will accept it.

To be actionable under Title VII, a claim of sexual harassment stemming from a hostile environment must be based on conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49. "This is not, and by its nature cannot be, a mathematically precise test ... But we can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.,* — U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). From the totality of the circumstances presented in this case, the jury could easily have found that an actionable hostile environment existed.

Defendants argue that because Sterman's individual acts which created the hostile environment upon which this case is based would have been "equally offensive" to men or women, they cannot support a Title VII claim. We need not ponder long before disposing of this argument. One would hope that men would be "equally offended" by Sterman's treatment of Ms. Hutchison and his other female employees. That conduct is egregious enough to offend the sensibilities of men as well as women cannot serve to immunize it for Title VII purposes.

It blinks reality to claim that sexual conduct which demeans women by a man in a position of power, even if not directed at a specific woman victim, equally impacts male and female subordinates.[3] This disparate effect is the discriminatory element in a hostile environment. Moreover, Sterman directed his offensive treatment strictly at women. Defendants' argument that a male worker would be equally offended by having to brush against Sterman to pass between the file cabinets or by being pinned in by him at their desk, even if true, is irrelevant. Sterman did not force men to brush against him to get past, nor did he look them up and down and express his pleasure in their appearance. The evidence was more than ample to support the jury's verdict finding sexual harassment.

## II. Cross–Appeal

### A. Motion for a New Trial on Damages

Plaintiff appeals the trial court's denial of her Rule 59(a) motion for a new trial on damages. When reviewing a Rule 59(a) motion we defer to the trial court and only reverse if the court has abused its discretion. To do so we would have to find the clear weight of the evidence against the jury verdict. *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir.1993).

The jury awarded plaintiff $80,000 in back pay and no front pay. Plaintiff asserts that the undisputed evidence puts her lost back pay at more than $120,000, assuming she would not have received promised raises and bonuses and not including fringe benefits (which the jury was to have included in the award according to their instructions). Plaintiff's replacement earned more than $147,000 in salary and bonuses between January 1, 1990 and March 31, 1993. Plaintiff asserts that the only way the jury could have arrived at the $80,000 figure was by finding that she failed to mitigate her damages, and

---

3. The concurrence erroneously claims that this observation is irrelevant because "[t]his is not a case where men are offended by the sexual harassment of their female coworkers." Defendants, however, make precisely this argument with respect to Sterman's treatment of Ms. Peters, whom he referred to as "Ms. Boobs": "Both men and women would have been exposed to the banter between Mr. Sterman and Ms. Peters and, therefore, there is no reason to believe that Ms. Hutchison, because she is a woman, would have been any more offended than a man would have been." Br. 19.

The concurrence's claim that "here much of the conduct at issue was equally demeaning to men and women" is also wrong. Whatever his other attributes, Sterman is apparently heterosexual. Therefore, he did not comment on men's dress and anatomy, nor did he offer men money to expose themselves, nor did he attempt to brush against them as they passed between cabinets, nor did he pin them in at their desks. Defendants do not claim that Sterman treated men and women the same. They claim instead that if Sterman had done these things to men they would have been equally offended (Br. 19, 20, 21, 23). This conjecture is neither relevant nor a defense.

that the evidence does not support such a failure.

A Title VII victim is presumptively entitled to full relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280. Once a plaintiff has established the amount of damages she claims resulted from her employer's conduct, the burden of going forward shifts to the defendant to show that the plaintiff failed to mitigate damages or that damages were in fact less than the plaintiff asserts. *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir.1989). To establish the affirmative defense of a plaintiff's failure to mitigate damages, the defendants must show that: (1) the plaintiff failed to exercise reasonable diligence to mitigate her damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. *Id.*

Plaintiff contends that the evidence fails to support either of the two required prongs. In denying her motion for a new trial, however, the trial court determined that a reasonable jury could have found both of the required elements based on the evidence presented. As the trial court noted, the reasonableness of plaintiff's job search "came down to a battle of experts." *Hutchison v. Amateur Electronic Supply, Inc.*, 840 F.Supp. 612, 628 (E.D.Wis.1993). She introduced testimony that "she registered with the State of Wisconsin Job Service ("WJS"), attended seminars, joined a networking group, took courses to upgrade her computer skills, answered newspaper ads, and submitted nearly 600 resumes to prospective employers." *Id.* In almost four years, these efforts resulted in 40 personal or telephone interviews but no job offers.

Defendants' expert found these efforts lacking in that plaintiff failed to register with a temporary employment agency which the expert claimed would have put her to work within two weeks. Defendants' expert further testified that if plaintiff's description of her job search was accurate, she should have found work within three or four months of termination. The trial court concluded that a reasonable jury could have accepted defendants' expert's opinion "that Ms. Hutchison, an experienced office manager with personnel background, did not act diligently by failing to utilize temporary or full-time employment services specializing in placing persons with her skills, especially as her period of unemployment exceeded several years." *Id.* This conclusion was not an abuse of discretion. Indeed it seems quite reasonable for the jury to have concluded, given the conflicting expert opinions and the long period of unemployment, that plaintiff's efforts "might have been sufficient if the period of unemployment had been shorter; they were not good enough for five [here four] years ... You cannot just leave the labor force after being wrongfully discharged in the hope of someday being made whole by a judgment at law." *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1428 (7th Cir.1986) (citations omitted).

Plaintiff argues that even if defendants met their burden by showing a lack of reasonable diligence on her part, they still did not establish that there existed comparable employment which she could obtain with reasonable diligence. The jury was instructed that "a position constitutes comparable employment if it would afford the plaintiff virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the position from which she was discharged."

Plaintiff contends that a reasonable jury could not have found that she could obtain comparable employment because it was undisputed "that Plaintiff will not, and, despite her best efforts could not, obtain a job in the same salary range as the one from which she was wrongfully terminated." Pl.Br. 26. Plaintiff bases this claim on the fact that at the time of her termination she was being paid $15/hour. Defendants' employment expert testified that "cream of the crop" office jobs pay from $10.25/hour for a bookkeeper to $13.25/hour for an office manager. Defendants' expert further contended that it was "not likely" that plaintiff could obtain one of these jobs because she lacked experience using popular office software.

The bottom line appears to be that Sterman had paid plaintiff far above the market

rate. Testimony was presented that Sterman's "generosity" in the form of high salaries and large bonuses was meant to buy tolerance for his behavior. The gist of plaintiff's argument is that because this "premium" elevated her salary above the norm, she had no duty to take otherwise comparable jobs which paid at the market rate.

■ The district court found that a reasonable jury could have concluded that "as it became clear to her that, given her skill level and training, she could not demand an identical salary for the same position in the market, she failed [her duty] to adjust her employment expectations accordingly." *Hutchison*, 840 F.Supp. at 629. The issue is whether the district court abused its discretion in determining that the jury acted within the law in reaching this implicit conclusion. Was the jury free to subtract this "premium for abuse" in determining what was comparable employment? The district court relied on noncommittal dicta in a footnote for the proposition that a plaintiff must adjust her notion of comparable employment after extended unsuccessful job searches. *United States v. City of Chicago*, 853 F.2d 572, 578 n. 3 (7th Cir.1988) (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 n. 16, 102 S.Ct. 3057, 3066 n. 16, 73 L.Ed.2d 721). This is not overwhelming authority. Nonetheless, the district court was correct in concluding that the jury could properly have excluded the above market premium that Sterman paid plaintiff in defining comparable employment.

■ The remedial purpose of Title VII is to place the victims "where they would have been were it not for the unlawful discrimination." 118 Cong.Rec. 7168 (1972), quoted in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373. A reasonable jury could have concluded from the evidence that absent Sterman's unlawful discrimination, plaintiff would have been "in the market" because the premium wages she received at AES were tied to her continued toleration of Sterman's abuse. Comparable nonabusive employment would then be compensated at the market rate, and plaintiff had a duty to seek and accept it.

■ Plaintiff also contends that the jury erred in failing to award front pay. The availability of front pay under the pre–1991 Act remains an open question in this Circuit. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993). But even if available, the district court did not abuse its discretion in finding that a reasonable jury could have failed to award front pay in the present case. "Persuaded by the expert testimony of [defendants' expert], the jury may reasonably have set a date between termination and judgment by which Ms. Hutchison, using reasonable diligence, should have found 'comparable' employment, as adjusted over time." *Hutchison*, 840 F.Supp. at 629. The district court went on to explain that because of the uncertainty in calculating the present value of the future discrepancy between the obtainable market wage and plaintiff's salary at AES, the jury could properly have concluded that the effort was not worth the candle. We agree with the trial court's conclusion: in light of our earlier discussion a reasonable jury may simply have determined that plaintiff was not entitled to any future premium because she was no longer subject to Sterman's abuse. The trial court thus did not abuse its discretion in denying plaintiff's Rule 59(a) motion for a new trial on damages.

B. Plaintiff's Rule 59(e) Motion to Amend Judgment to Grant Full Relief

■ Plaintiff filed a motion to amend the judgment under Rule 59(e). The district court denied the motion as to plaintiff's request for reinstatement, injunctive relief, and prejudgment interest, and granted her request for reasonable costs and attorneys' fees in the amount of $67,538.88. Plaintiff appeals all of these rulings. We review the court's rulings for abuse of discretion.

1. Reinstatement

■ Reinstatement, although usually the preferred remedy, is not always required. *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir.1992). The decision is consigned to the sound discretion of the district court, *id.* at 1369, which should not grant reinstatement "where the result would

be undue friction and controversy." *McKnight v. General Motors Corp.*, 908 F.2d 104, 115 (7th Cir.1990).

■ In this case, a number of considerations led the district court to conclude that reinstatement would be inappropriate. First, because AES is a small, closely held organization (Sterman is the 100% owner), reinstatement would be difficult for the court to administer because of "the degree of interaction required among employees." Pl.App. 49. Though Sterman, the primary wrongdoer, is on indefinite medical leave, he remains the sole owner and his brother (who was on the other end of defendant Sterman's salacious phone conversations) now runs the business.

■ The court also cited friction and animosity which has developed between plaintiff and AES management. While mere employer hostility developed during litigation cannot alone defeat reinstatement, *McKnight I,* 908 F.2d at 116, friction between the parties is a legitimate concern, particularly where the employer is a relatively small operation and the district court is faced with the potentially difficult and expensive task of monitoring the parties' future employment relationship. Moreover, if AES decided to cut back its salaries to the market level in Sterman's absence, the court feared it would be required to referee disputes over cutbacks and future retaliation claims.

■ Finally, the district court cited plaintiff's own ambivalence expressed at trial as to whether she wanted her job back, based on her concerns that the problems at AES survived Sterman's departure and her fear of his return. The court was particularly concerned with plaintiff's testimony that despite her concern that the environment at AES remained hostile, she continued to seek reinstatement because "it is better to have a job when [ ] looking for another job." Pl.App. 50. The district court found that this statement "smacks of the 'strategic motive' explicitly rejected in *McKnight I.*" *Id.* The concern expressed in *McKnight I,* 908 F.2d at 116, involved the situation in which an employee sought reinstatement in order to force the employer to "buy him out." Plaintiff's

statement may have betrayed less than long-term devotion to AES, but the district court may. have jumped too quickly in equating this with the threat of a strategic forced buyout. Moreover, if having a job is a benefit in seeking another, it is a benefit plaintiff would have enjoyed but for her unlawful termination, and thus not inconsistent with the make-whole nature of Title VII remedies.

Despite these reservations over the district court's interpretation of plaintiff's testimony, because there were sufficient other grounds upon which the district court relied, it did not abuse its discretion in finding reinstatement inappropriate.

2. Prejudgment interest

■ Prejudgment interest is an element of complete compensation and a normal incident of relief under Title VII. *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549. This Court has issued conflicting pronouncements on whether prejudgment interest is required or discretionary. Compare *City of Chicago v. United States Dept. of Labor,* 753 F.2d 606, 608 (7th Cir.1985) ("Prejudgment interest is a necessary part of the compensation.") with *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 411 (7th Cir.1989) ("The decision to grant or deny an award of prejudgment interest lies within the discretion of the district court."). If a district court does have discretion in whether to grant or deny prejudgment interest, that discretion is very limited. As we stated in *Gorenstein Enterprises v. Quality Care–USA,* 874 F.2d 431, 436 (7th Cir.1989), "The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violation." See also *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1311 (7th Cir.1984) (refusal to award prejudgment interest because liability question was close is an abuse of discretion).

The district court refused to grant plaintiff prejudgment interest, reasoning that the jury's award of $80,000 must have included an implicit determination that plaintiff "effectively abandoned the job market at some point during her period of unemployment." This meant that the jury's "back pay award

required a significant degree of evidentiary balancing, interpolation of the facts and reflection over the testimony": thus the economic loss plaintiff suffered was not "easily ascertainable" and prejudgment interest was inappropriate. Pl.App. 51.

■■■ The district court relied on *Donnelly,* 874 F.2d at 411, for the proposition that "interest should only be awarded in Title VII cases if the economic loss to the plaintiff is 'easily ascertainable.'" (Pl.App. 42). This conclusion reads *Donnelly* too broadly and ignores *Gorenstein* and other, later Seventh Circuit precedent. In *Donnelly* this Court held that the district court abused its discretion in denying prejudgment interest because the issue of plaintiff's diligence in seeking alternate employment was close. In announcing this result the Court said, "Whether or not an award of interest should be granted turns upon whether the amount of damages is easily ascertainable, not whether the issue of mitigation is 'close.'" *Id.* Any authority for denying prejudgment interest in *Donnelly* thus is dicta, since the *Donnelly* court reversed the district court's denial of interest. In any event, the amount of back pay on which interest is to be awarded in this case is not uncertain—the jury awarded $80,000. The fact that the jury had to make implicit calculations to reach that amount does not defeat the presumption in favor of prejudgment interest. See *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1299 (7th Cir.1987) ("The award of back pay under Title VII is an 'equitable' rather than a 'legal' remedy, however, and the common law requirement of certainty has never been applied to it.").

■■■ The correct question for the district court, assuming it has discretion, is whether the uncertainty introduced by the jury's finding of partial failure to mitigate suffices to defeat the presumption in favor of prejudgment interest given the fact that "[w]ithout it compensation of the plaintiff is incomplete and the defendant has an incentive to delay." *Gorenstein,* 874 F.2d at 436. The answer is no. *Handy Button,* 817 F.2d at 1299.

No purpose would be served by allowing the wrongdoer to keep the entire time value of the money, just because the exact amount is subject to fair dispute. Once we know that back pay is at least some minimum, it is safe to award interest on that amount. *Id.*

In *Handy Button,* the plaintiff sought future earnings and back pay totaling $205,000. The jury awarded $130,000 without differentiating between back pay and future earnings. Nonetheless, this Court held that the computation was neither "impossible or hopelessly speculative" and suggested a number of possible methods of apportionment which the district court could choose between on remand. *Id.* at 1298. Not only was the amount of back pay awarded by the jury uncertain in *Handy Button,* so too was the way that it should be apportioned over the decade that the plaintiff was out of work. Yet we reversed the denial of interest. *Id.* at 1299.

■■■ Because the jury in the present case specified the total award as back pay, the only calculational ambiguity is in the apportionment over the years between plaintiff's termination and judgment. If the jury did find that she left the job market at a certain point (an assumption that is at least consistent with if not required by the jury's award of partial back pay and no front pay), interest should be calculated on the back pay she would have received up until that day. That is, she should receive interest on her yearly salary starting from the first year after termination and continuing until she was deemed to have left the job market, *i.e.* the date at which her total post-termination earnings would have been $80,000. This would obviously give her the maximum interest. The minimum interest would result from treating the $80,000 as earned pro-rata every year from termination to judgment and calculating interest accordingly on an annual basis. It is within the trial judge's discretion to choose between these calculational methods or any other reasonable method. It is not within the district court's discretion to deny the whole award of interest because of these calculational ambiguities. "Absolute certainty is unavailable no matter what kind of instruction is given to the jury; it is also unnecessary." *Handy Button,* 817 F.2d at 1299. To hold otherwise would be to make

prejudgment interest unavailable whenever a jury finds a partial failure to mitigate or otherwise awards anything but exactly what the plaintiff seeks. Such a rule would systematically deny plaintiffs full relief under Title VII.

### 3. Attorneys' fees

Plaintiff sought attorneys' fees and costs as a prevailing party under Title VII. Plaintiff filed affidavits delineating $122,124.87 in fees and expenses. Defendants objected to the reasonableness of the bill but did not specifically challenge any of its provisions. The district court nonetheless, without the benefit of a hearing, reduced the amount recoverable by plaintiff to $67,538.88. The court began by cutting 10% of the proposed fee for the time plaintiff's counsel spent on her unsuccessful ADEA claim. The court then subtracted "other unnecessary, duplicative, or unreasonable charges in light of the straightforward factual nature of this case, lack of intense discovery battles (although the defendant was twice sanctioned for relatively benign transgressions) and clear absence of complex legal issues." Pl.App. 53. The result was a lodestar figure of $78,538.88 representing a cut in attorney hours from 843.75 to 536.2. The court proceeded to make further cuts in this lodestar figure based on the factors delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The court trimmed $3000 for what it considered unnecessary written motions in limine regarding evidentiary issues, $5000 for failure to utilize paralegals and other support staff, and $3000 for the seemingly high 3 to 2 ratio of partner to associate hours. Pl.App. 54.

The amount of fee awards is left to the discretion of the district court because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40. We must, nevertheless, remand for a new award in this case. First, a "district court may not arbitrarily reduce the number of hours requested; if it reduces hours it should provide a 'concise but clear explanation'." *Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir.1992) quoting *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986). The district court's above-quoted explanations for its 10% cut and further subtractions in reaching its drastically reduced lodestar figure are insufficient. The court's expression of general concerns accompanied by seemingly arbitrary cuts in billable hours is neither fair to litigants nor an appropriate basis for meaningful appellate review. Second, and more important, "plaintiff's counsel is entitled to be heard on the matter before such a significant reduction in hours is made by the court." *Smith*, 969 F.2d at 440 (citations omitted).

In her brief plaintiff asserts that her counsel was essentially a sole practitioner with only part-time associates and law clerks during much of this litigation. If true, the district court's reduction for what it saw as top-heavy staffing cannot be sustained. Similarly, plaintiff claims that her counsel did not normally bill clients for paralegal and support staff hours and thus did not include them in his fee request. If so, the district court's further subtraction for failure to utilize support staff is also unfounded. Plaintiff and her counsel should have been given an opportunity to make these arguments in the district court before reductions were made.

Counsel who oppose fees have a "responsibility to state objections with particularity and clarity." *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir.1985). When, as in this case, defense counsel fails to do so, the district court should not reward the defendants by denying the plaintiff's counsel an opportunity to defend his claim against specific challenges, whatever their source. Because of the district court's failure to conduct a hearing and the insufficiency of its explanation of its lodestar calculation we remand for a new fee award.

### CONCLUSION

We affirm the district court's denial of defendants' renewed motion for judgment as a matter of law and its denial of plaintiff's

motion for a new trial on damages. We affirm the denial of reinstatement but reverse and remand on the denial of prejudgment interest. We also reverse and remand the award of attorneys' fees with instructions that the trial court hold an evidentiary hearing in which plaintiff's counsel can defend against the district court's proposed cuts.

MANION, Circuit Judge, concurring.

I join the court in its disposition of the several issues discussed, but wish to emphasize a few points.

In *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1297–99 (7th Cir.1987), this court reversed the district court's denial of prejudgment interest. In doing so, we noted that prejudgment interest may be denied because it is not readily determinable. However, in *Williamson* we reasoned that interest could be properly determined under at least two methods and, therefore, the district court erred in denying prejudgment interest. Similarly, as the court in this case sets forth, the time period represented by the $80,000 verdict is determinable under two methods and, therefore, prejudgment interest is appropriate. Although we reach the correct result here, I emphasize that in some cases the facts underlying the damage award may make the determination of interest too complex and it is then within the trial court's discretion to deny prejudgment interest. *Williamson*, 817 F.2d at 1298 ("[i]f some fact or consideration the parties have not drawn to our attention makes the ascertainment of the portion of the award representing back pay too complex, the district court may choose to award none").

The court remanded the attorney's fees award merely to allow the district court to set forth its basis for reducing the award. Nevertheless, a reduction in the case was clearly appropriate. This case was straightforward and not complex, yet the plaintiff sought more than $120,000 in attorney fees when the jury awarded Hutchinson $80,000. Moreover, Hutchinson originally brought this case as an age discrimination suit. Hutchinson did not succeed on that claim. Therefore, she was not entitled to any attorney's fees stemming from the prosecution of the age discrimination claim. Finally, while it might be difficult to sustain a cut-off of what the district court saw as top-heavy staffing charges, some reduction may be appropriate so that the fees charged are reasonable in light of the complexity of the tasks performed.

Finally, this is a closer case on the merits than the court implies. Hutchinson worked at Amateur Electronic for over twenty years. Spreading the complained-of conduct over this extended period of time negates the severity and pervasiveness portrayed by the court. She did not define the environment she worked in for years as hostile until after she was fired. Moreover, Sterman, a 400– to 500–pound man, behaved towards all of his employees in a boorish, rude and obnoxious manner. Much of his behavior was equally demeaning to men and women, thus making sexual harassment charges doubtful. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 620 (6th Cir.1986) ("instances of complained-of sexual conduct that prove equally offensive to male and female workers would not support a Title VII sexual harassment charge because both men and women were accorded like treatment"); *Ebert v. Lamar Truck Plaza*, 878 F.2d 338, 339 (10th Cir.1989) (rough language used indiscriminately by both male and female employees did not constitute hostile workplace environment based on sex harassment). He apparently used this boorish behavior to cover certain personal shortcomings. Whatever the psychology of his loud and sometimes vulgar banter, his behavior was sometimes offensive to male and female employees alike. For example, Sterman routinely asked both men and women "How's your sex life?" Greeting all employees—regardless of their gender—in this way, while obnoxious is not sexual harassment. *Rabidue*, 805 F.2d at 620; *Ebert*, 878 F.2d at 339. In fact, a male employee of Sterman's also complained about his vulgarity.[1] Ster-

---

**1.** The court states: "It blinks reality to claim that sexual conduct which demeans women by a man in a position of power, even if not directed at a specific woman victim, equally impacts male and

female subordinates." Opn. at 1043. While true, this statement ignores the nature of the conduct at issue in this case. This is not a case where men are offended by the sexual harass-

man's conduct had to be severe and pervasive enough to alter Hutchinson's conditions of employment, for her to succeed on a hostile work environment claim. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Nonetheless, given the deference we owe a jury, the facts as presented were sufficient to affirm in this case.

For these reasons, I respectfully concur.

ment of their female coworkers; rather, here much of the conduct at issue was equally demeaning to men and women. As such, it does

not constitute sexual harassment. *Rabidue,* 805 F.2d at 620; *Ebert,* 878 F.2d at 339.