73 F.3d 364
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Melvin D. REED, Plaintiff-Appellant, Cross-Appellee,
v.
NDC MEGAMARTS, INC., Defendant-Appellee, Cross-Appellant.
 Nos. 95-2428, 95-2543.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 8, 1995.
Decided Jan. 3, 1996.
 
 Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 After a bench trial, the district judge concluded that NDC Megamarts constructively discharged Melvin Reed in retaliation for his complaints about racial harassment in the workplace, thereby violating Title VII of the Civil Rights Act of 1964. The judge awarded $5,000 in damages, ruling that by antagonizing later employers (precipitating one discharge after another) Reed failed to mitigate his loss; the judge also declined to order Reed's reinstatement to his former position. Both sides have appealed.
 
 
 2
 On the question whether there was a retaliatory discharge, the evidence would permit a rational trier of fact to conclude that Reed's services as night supervisor of the floor-cleaning staff at defendant's Tri-City Pick 'N Save store in Oak Creek, Wisconsin, were deemed satisfactory until he complained about racial slurs in the workplace. Reed was the only black supervisor (and one of two black employees) at a store with a staff exceeding 175. Friends told Reed that other employees, behind his back, called him "coon," "nigger," and "spear chucker." One employee was fired when he refused to apologize for such comments. We may assume that upper management did not know the identities of the other name-callers, and that the employer could not be held directly liable for maintaining a racially hostile environment. This is not dispositive.
 
 
 3
 When Reed filed a complaint about this subject, managers began to find fault with his performance. The district court concluded, with support in the record, that the fault-finding was "causally connected to and in retaliation for [Reed's] filing the complaint." Things went downhill. Reed had been tardy before, without strong objection; now his tardiness was held against him. Managers even complained that Reed was tardy on days he was not scheduled to work. Upper management wrote out a detailed schedule for him to follow, effectively stripping him of most supervisory control, and then relieved him as supervisor. The district court concluded, again with support, that this demotion--which placed him in a labor force known to exhibit racial hostility, without the protection of supervisory status--was a constructive discharge. Reed quit. The logical conclusion is that the discharge was itself retaliatory. The district judge did not make this finding explicitly, but the other findings, including the ultimate finding of liability, imply it so strongly that it would be pointless to remand for its formal expression.
 
 
 4
 The employer stresses that Reed was a difficult employee, and that he shunned the training sessions for a new floor-care system the store adopted. The district court might well have attributed the demotion to these facts, but the evidence did not compel this. Many an employee is difficult and disdainful, but employers tolerate those who do the job well. The district court believed that Reed's shortcomings would have been tolerated, but for his complaints about the racial hostility of other workers. Whether or not we would have reached the same conclusion, it cannot be called clearly erroneous and therefore must be respected. Pullman-Standard v. Swint, 456 U.S. 273 (1982).
 
 
 5
 After he left NDC's employ, Reed worked for approximately 20 employers during the next five years. He was fired from most of these jobs, principally because, the district judge concluded, he was hard to get along with and devoted more energy to gathering evidence of discrimination than to doing his tasks. Consequently, the judge held, he had not mitigated his damages. Reed contends that this finding is erroneous because he did the best he could in the face of real rather than imagined discrimination by other employers. Again, however, the question for us is whether the district judge committed clear error. We think not. Reed does not deny being a difficult employee. The extraordinary number of discharges suggests that Reed was not doing his best to stay employed. Reed does not contest the back-pay figure of $5,000 if the finding of failure to mitigate should be sustained. We do sustain it, and as NDC likewise accepts the $5,000 figure, we need not determine whether it is the best estimate of Reed's actual loss.
 
 
 6
 By the time of trial, Reed was holding a job that pays substantially more than the position he lost at NDC Megamarts. That fact, coupled with the hostility that had arisen between Reed and his ex-employer, a hostility attributable in no small part to Reed's conduct, led the district court not to order his reinstatement. Once again our review is deferential. Albemarle Paper Co. v. Moody, 422 U.S. 405, 424 (1975). Once again we conclude that the district court's discretion has not been abused. Hutchinson v. Amateur Electronic Supply, Inc., 42 F.3d 1037, 1042 (7th Cir.1994); Coston v. Plitt Theatres, Inc., 831 F.2d 1321, 1330-31 (7th Cir.1987), vacated on other grounds, 486 U.S. 1020 (1988).
 
 
 7
 The final question is whether Reed is entitled to prejudgment interest on the award of pack pay. Prejudgment interest is the norm in Title VII cases, to be denied for strong reasons only. Hutchinson, 42 F.2d at 1047. The district court did not award prejudgment interest and did not give any reason for the omission. The employer says that the reason is waiver: Reed failed to request it or to offer evidence of the appropriate rate. But Reed's submissions concerning the quantification of damages repeatedly mention prejudgment interest; he obviously wanted it. He may well be entitled to it whether he asked or not, see Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1298 (7th Cir.1987), but as he did ask we need not pursue that possibility.
 
 
 8
 The lack of evidence concerning the appropriate rate is not important. The district judge has two options when awarding prejudgment interest and there is no statutory rate: the prime rate of interest, and the rate (normally higher) that the defendant pays for unsecured loans. In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1331-35 (7th Cir.1992); Gorenstein Enterprises, Inc. v. Quality Care-U.S.A., Inc., 874 F.2d 431, 436-37 (7th Cir.1989). The prime rate can be looked up in tables published by the Federal Reserve; it is an appropriate subject of judicial notice. A plaintiff happy with the prime rate, as Reed says he is, need not offer evidence of the rate the defendant pays for money. And the defendant has no legitimate complaint that the plaintiff, by omitting evidence, has settled for the lower of the two plausible rates of interest.
 
 
 9
 Reed is entitled to prejudgment interest. The case is remanded for its computation and award. The judgment is otherwise affirmed.