David **DREWS**, Plaintiff,

v.

**SOCIAL DEVELOPMENT COMMISSION,**
Defendant.

No. 2:97CV01071.

United States District Court,
E.D. Wisconsin.

Aug. 11, 1998.

---

Thomas A. Nelson, Shneidman Myers Dowling, Blumenfield Ehlke Hawks Domer, Milwaukee, WI, for David Drews, plaintiff.

F. Thomas Olson, James H. Hall, Jr, Hall Charne Burce & Olson, Milwaukee, WI, for Social Development Commission, defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

David Drews sued his former employer, the Social Development Commission ["SDC"], for its alleged race discrimination and retaliation against him. The plaintiff, who was employed as a housing specialist for the defendant, alleged that the SDC discriminated against him when it did not interview him for a writer position and again when it subsequently terminated him. He also claimed that his termination, which the SDC based on the fact that his position had a city of Milwaukee residency requirement that he did not satisfy, was really just retaliation for his having earlier complained about the discrimination.

He brought his claims, which were pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2 and 2000e–3 ["Title VII"], and 42 U.S.C. § 1983, before a jury on July 6–10, 1998. At the end of the parties' production of evidence, the SDC moved for judgment as a matter of law on the plaintiff's section 1983 claims and on his Title VII retaliation claim. *See* Rule 50, Federal Rules of Civil Procedure. I granted the defendant's motion and allowed only Mr. Drews' Title VII race discrimination claims to go to the jury. The jury found that the defendant did discriminate against Mr. Drews based on his race when it failed to grant him an interview for the writer position and gave the job to someone else, but did not discriminate against Mr. Drews when it discharged him. The jury awarded the plaintiff $60,000.00 in compensatory damages.

The court must still answer the remaining questions of how much back pay the plaintiff should receive and how much the plaintiff's attorneys are entitled to receive as legal fees.

## I. Back Pay

■ Courts may award the equitable remedy of back pay when there has been a finding that the defendant "intentionally engaged in" an unlawful employment practice. *See* 42 U.S.C. § 2000e–5(g)(1); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1579 (7th Cir.1997) ("The district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole."); *see also Taylor v. Gilbert & Bennett*, 1997 WL 30948, at *4 (N.D.Ill. Jan.15, 1997) (noting that "back pay has long been considered an equitable remedy" and stating that "equitable matters are for the court"). Absent special circumstances, a court should award back pay when there has been a finding of a Title VII violation. *EEOC v. Accurate Mechanical Contractors, Inc.*, 863 F.Supp. 828, 835 (E.D.Wis.1994).

Mr. Drews argues that he should receive $101,000 in back pay. He calculated this amount based in part on the salary that he would have earned if he had received the writer position for which he applied. In making this argument, the plaintiff assumes that he would not have been terminated from the writer position since that position did not have the Milwaukee residency requirement. His calculation also includes the value of SDC's fringe benefits, including family insurance, retirement benefits, and tuition reimbursement. The SDC does not dispute that Mr. Drews is entitled to recover lost fringe benefits as back pay. *See Accurate Mechanical*, 863 F.Supp. at 837 ("Backpay awards under Title VII should include fringe benefits that the claimant would have received absent the employer's discrimination.").

■ While the SDC does not deny that Mr. Drews is entitled to some back pay, the defendant has three main objections to the plaintiff's proposed amount of back pay damages. The defendant's first argument is that because the jury only found that the SDC discriminated against Mr. Drews when it did not interview him for the writer position, the court, in calculating back pay damages, should not assume that he would have received the position. Mr. Drews responds by stating that the jury explicitly found that the defendant would have hired Mr. Drews for the position, *but for* the discrimination in the interview process. The plaintiff bases his argument on question one of the special verdict form, which reads: "Was the plaintiff, David Drews, discriminated against on the basis of his race by the defendant, Social Development Commission, when it failed to grant him and interview and awarded the writer position to someone else?" The jury answered "yes" to that question.

I agree that, read in a vacuum, question one of the special verdict form may seem somewhat ambiguous. Put in context, however, I do not believe that the jury's response constituted an affirmative finding that the SDC would have given Mr. Drews the writer position if there had been no discrimination against him in the interview

process. The evidence at trial focused on whether Mr. Drews should have been given an interview. Indeed, Mr. Drews himself testified in front of the jury that he was not arguing that he should have received the position, just that he should have been given the chance to interview for the job. I cannot now accept the plaintiff's argument that "the jury found that Drews would have ... been hired but for the SDC's discrimination against him." (Pl.'s Reply Brief, at p. 2.) Given the plaintiff's testimony, in addition to the other evidence that Mr. Drews put forth at trial, I find that special verdict question describes one discriminatory act: the SDC's act of not interviewing Mr. Drews, and as a natural result, hiring someone else. The question did not ask the jury to speculate on whether the SDC would, or should, have given Mr. Drews the job. Mr. Drews is therefore not entitled to the assumption that he would have received the writer job.

■ The resulting question is how to calculate Mr. Drews' back pay when there has been no finding that he necessarily would have received the job. The SDC argues that the court should use the "loss of a chance" doctrine to calculate the appropriate amount of back pay. Under this doctrine, described by the court of appeals for the seventh circuit in *Doll v. Brown*, 75 F.3d 1200, 1205–07 (7th Cir.1996), the court calculates the probability that the plaintiff would have received the job if he had been given the chance. In *Doll*, the defendant had refused to consider the plaintiff for a promotion. The district court, in awarding back pay to the plaintiff, split the difference between what the plaintiff received in his existing job and what he would have received if he had received the promotion. The court of appeals said, in dicta, that it was not "averse to splitting the difference in cases where proof of injury is inescapably uncertain," but rather than indiscriminately splitting the difference, the better approach may be to determine the *probability* of the plaintiff's "receiving the promotion but for the discrimination." *Id.* at 1205–07. Noting that the lost chance doctrine emerged from medical malpractice cases, the court of appeals did not hold that courts should use that doctrine in employment discrimination cases. It did say, however, that "[w]e merely commend it to the consideration of bench and bar as a possible method of arriving at more just and equitable results in cases such as this." *Id.* at 1207.

■ I believe that it is appropriate to use the lost chance doctrine in the case at hand. Contrary to the plaintiff's argument, I cannot find based on the submitted evidence that there was a 100 percent chance that Mr. Drews would have received the job if he had been granted an interview. As I discussed above, the plaintiff's argument at trial emphasized the SDC's not granting him an interview. As a result, he presented very little evidence about his chances of actually getting the job once he received the interview. While Mr. Drews did present evidence about the qualifications and abilities of the person who the SDC ultimately did select for the position, he did not discuss the other applicants who received an interview. It is therefore impossible for me to say, for example, that Mr. Drews would have been among the top three interviewees for the job. Given the lack of evidence about the candidates, I believe that the best course is to find that each of the applicants who received an interview had an equal chance of getting the writer position.

The plaintiff does not dispute the defendant's position that the SDC interviewed eight people for the job. Based on analysis above, I find that Mr. Drews would have had a one in eight chance of receiving the position if the defendant had interviewed him. He should therefore receive as back pay 12.5 percent of the salary and fringe benefits that he would have received if he had been given the job. Before I calculate the final amount, however, I will address the defendant's other two arguments.

■ The SDC also contends that Mr. Drews' calculation of $101,000 is based on his faulty assumption that he would have received the highest salary in the range available for the writer position. Because the SDC only paid Mr. Drews 81 percent of the full range for his housing specialist position, the defendant argues that the court should presume that the plaintiff would have only received 81 percent of the full range for the writing position. The defendant, however, takes its proposition one step further and argues that the court should consider only 81 percent of Mr. Drews' proposed amount of $101,000. The problem with this proposition is that it assumes that Mr. Drews would have only received 81 percent of the fringe benefits as well.

The defendant has not convinced me to reduce Mr. Drews' back pay by 19 percent. The plaintiff presented solid evidence about his previous experience as a writer, experience that very well could have put him at the top of the pay scale range. Moreover, he expressly testified at trial that he estimated the lost amount to be approximately $101,000. The SDC, other than point out that Mr. Drews' housing specialist salary was 81 percent of the possible range, did not show why Mr. Drews would not be paid at the high end of the writer position salary. It did not, for example, challenge his argument that his writing experience would have elevated his pay range standing and did not extensively cross examine his estimate of $101,-000. Accordingly, I will accept Mr. Drews' position that he would have received $101,-000 in salary and benefits if the SDC had awarded him the writer job. *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir.1994) ("Once a plaintiff has established the amount of damages she claims resulted from her employer's conduct, the burden of going forward shifts to the defendant to show ... that damages were in fact less than the plaintiff asserts.").

■ The SDC's final objection is that Mr. Drews failed to mitigate his damages. It is the defendant's burden to show that the plaintiff did not mitigate his losses. *Id.* To meet this burden the SDC must show that Mr. Drews "failed to exercise reasonable diligence to mitigate" his damages and that if he had exercised reasonable diligence, Mr. Drews might have found comparable work. *Id.* I believe that the SDC has not met its burden on this issue.

Mr. Drews described in great detail his efforts at obtaining employment that would have been comparable to the work that he had been doing (or that he wanted to do) at the SDC. For example, he submitted as exhibits copies of his numerous job applications, many of which were for local writing positions. He also testified about his strategy in making himself a more marketable job candidate.

The SDC, in outlining the plaintiff's purported failure to search for employment, focuses on its belief that Mr. Drews did not pursue other employment opportunities at the SDC. First, Mr. Drews' testified that he told a personnel representative at the SDC that he was still interested in any open positions. Second, the SDC has not shown how the other SDC positions were comparable to either the housing position or the writing position. Third, as long as a plaintiff exercises reasonable diligence in getting comparable employment elsewhere, the mitigation requirement does not demand that a former employee who suffered discrimination continue to seek employment from the defendant,.

■ The defendant also challenges Mr. Drews' decision to leave a housing specialist job in July, 1997 so that he could take a higher paying, but short term, writing assignment with the University of Wisconsin, Milwaukee. The fact that the SDC job that Mr. Drews had applied for, and was denied an interview for, was a writing position, however, undercuts the SDC's contention that Mr. Drews failed to mitigate his damages when he took a writing

assignment. This is true even if though the assignment was a short term position. The plaintiff testified that he had hoped that the writing position would lead to similar assignments.

■ As its final argument that Mr. Drews did not mitigate his damages, the SDC points to the plaintiff's failure to follow up on a substitute teacher position with the Milwaukee public schools. Mr. Drews states that he applied for and was "acknowledged as qualified for substitute teacher work." I do not believe that the SDC has met its burden of showing that the substitute teacher position was "comparable" work.

Because I have found that the defendant has not successfully challenged the plaintiff's submission that he would have been received $101,000 in salary and benefits if he had received the writer position, that Mr. Drews is entitled to 12.5 percent of that amount, and that the defendant did not prove that Mr. Drews failed to mitigate his damages, I will award him back pay damages in the amount of $12,625.00.

■ The SDC next argues that the plaintiff is not entitled to prejudgment interest on his back pay damages. There is a presumption that the court should award prejudgment interest on the award of back pay to Mr. Drews. *See Gorenstein Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989) (announcing a rule "that prejudgment interest should be presumptively available to victims of federal law violations" and finding that "[w]ithout it, compensation of the plaintiff is incomplete and the defendant has incentive to delay"). Indeed, the court of appeals for the seventh circuit has noted that there is a conflict within the circuit on the question of whether a district court even has any discretion to decide whether to award prejudgment interest. *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1046 (7th Cir.1994); *compare Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 411 (7th Cir.1989) ("The decision to grant or deny an award of prejudgment interest lies within the discretion of the district court."), *aff'd on other grounds*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), *with City of Chicago v. United States Dept. of Labor*, 753 F.2d 606, 608 (7th Cir.1985) ("Prejudgment interest is a necessary part of the compensation...."). The *Hutchison* court concluded that if the district court does have discretion, that discretion is "very limited." *Hutchison*, 42 F.3d at 1046.

■ The SDC argues that the amount of back pay due to Mr. Drews is not "easily ascertainable" and therefore that he should not received prejudgment interest on that amount. *See Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir.1987) (concluding that, besides undue delay in the filing of the case, the only reason to deny the plaintiff prejudgment interest is when "'the amount of backpay is not readily determinable'") (citation omitted). Specifically, the defendant states that the uncertainty of calculating the *probability* of Mr. Drews' receiving the job also makes it difficult to calculate the interest on that back pay.

■ The problem with the defendant's argument is that once the court has determined the amount of back pay owed to the plaintiff, no matter how difficult that original calculation was, the plaintiff is entitled to receive the interest on at least that amount. The court of appeals has said that "[i]t is within the trial judge's discretion to choose between these calculational methods or any other reasonable method" but that "[i]t is not within the district court's discretion to deny the whole award of interest because of these calculational ambiguities." *Hutchison*, 42 F.3d at 1047. The *Hutchison* court, in discussing the presumption of prejudgment interest, even when the exact calculation of back pay is uncertain, relied on *Williamson*. The latter court said, "No purpose would be served by allowing the wrongdoer to keep the entire time value of the money, just because the exact amount is subject to fair

dispute. *Once we know that back pay is at least some minimum, it is safe to award interest on that amount.*" *Williamson*, 817 F.2d at 1299 (emphasis added). I have determined that Mr. Drews should receive $12,625 in back pay, and I also believe that his full relief under Title VII entitles him to receive prejudgment interest on that amount.

The question of how to calculate this prejudgment interest still remains. The court of appeals for the seventh circuit has held that the district court should use the prime market rate that prevailed during the pendency of the litigation. *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 274 (7th Cir.1993); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1332 (7th Cir.1992) (per curiam). According to the court of appeals, the prime market rate is "the rate banks charge for short-term unsecured loans to creditworthy customers." *In re Amoco Cadiz*, 954 F.2d at 1332. I will direct Mr. Drews to determine the appropriate amount of prejudgment interest using the average market rate for each year of the pendency of the litigation. The plaintiff should calculate the interest by compounding annually. The SDC will have an opportunity to file any objections to the plaintiff's calculation.

## II. Attorneys' Fees

Mr. Drews also asks for $52,682.00 in attorneys' fees. He bases this amount on his attorneys' hourly rates multiplied by the number of hours that they spent working on his case. This "lodestar" amount is the appropriate place to begin an attorneys' fees analysis. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.1996). Mr. Drews' principal attorney, Thomas Nelson, charges an hourly rate of $185.00, and he states that he worked 207.7 hours on this case. There were also other attorneys for the plaintiff who were involved to a much lesser extent: Daniel Shneidman, who bills at a rate of $225.00, worked 29.1 hours; Patricia Meunier worked 34.5 hours on the case at a billing rate of $150.00; and Aaron Hal-

stead worked a half an hour at a rate of $185.00. The plaintiff also lists the 25.55 hours that paralegal Christina Kilcoyne worked at a rate of $55.00, the 8.25 hours that law clerk S. Lubar worked at a rate of $55.00, and the 10.7 hours that law clerk "Cheri," who also bills at the rate of $55.00, worked. The SDC does not dispute the reasonableness of the rates at which the attorneys and other staff who worked for Mr. Drews charged. It also does not dispute the fact that Mr. Drews, as the prevailing party (at least in part) is entitled to some attorneys' fees. *See* 42 U.S.C. § 2000e–5(k).

The court is required to reduce the lodestar amount by the amount, if any, of any unnecessary or unreasonable time spent working on Mr. Drews' case. It is the SDC's burden to oppose Mr. Drews' attorneys' fees with "particularity and clarity." *Hutchison*, 42 F.3d at 1048 (quoting *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir.1985)). The SDC has set forth six specific objections to certain portions of the plaintiff's attorneys' fees petition. I will address each objection.

The SDC's first objection regards the plaintiff's statement that his attorneys deleted time spent by Patricia Meunier between October 31, 1996, and January 29, 1997 because that time was duplicative. Despite this apparent deletion, the defendant claims that the total at the end of the petition includes these hours. Mr. Drews responds to this argument by stating that Ms. Meunier's hours are not for the October, 1996 through January, 1997 period, but rather for the times "in which she met with other staff members to work on this case, or worked on this case alone but on the same day as other staff members." (Pl. Reply Brief, at p. 9.) My review of the petition shows that the total only includes the hours that Ms. Meunier worked individually and with other attorneys on this case and does not include the deleted hours. I will therefore allow those charges.

■ The defendant's second objection is that the charges for 9.3 hours spent in drafting the Equal Rights Division ["ERD"] complaint and filing a response with the ERD, in addition to the 16.6 hours spent on drafting the federal court complaint, were excessive and duplicative. I cannot agree. While drafting a complaint may sometimes be as simple as copying a form, that was not so in this case. Mr. Drews' thorough and well-written complaint described to the court the somewhat complex history of Mr. Drews' case, as well as specifically set forth his causes of action. As for as his ERD complaint and response, I do not believe that less than 10 hours of work on these two filings is excessive. While some of the same work may have gone into the two complaints, they are different documents filed in different forums. Mr. Drews was not obligated to copy the first ERD complaint and file it in this court.

■ The SDC's third objection to Mr. Drews' attorneys' fees petition is that Mr. Shneidman spent 2.6 hours reviewing newspaper articles about the SDC, an activity that, according to the defendant, is "marginally relevant, at best." (Def.'s Brief, at p. 12.) Mr. Drews responds by saying that "the articles provided a greater wealth of information about SDC's internal practices and policies in a more reliable detailed and comprehensive way that could have been obtained by any other use of an equivalent and brief, period of time." (Pl.'s Reply Brief, at p. 9.) While no attorney can base a significant portion of his fees on a review of newspaper articles, it is possible that background material can be learned from such a course, even if erroneous. Less than three hours of such research is neither unreasonable nor excessive. I will allow those charges to stand.

The defendant's fourth objection is that the plaintiff sets forth his attorneys' fees in a form that it is difficult to respond to. Specifically, the SDC objects to the fact that one of the plaintiff's entries for a particular day will include more than one attorney, or an attorney and a paralegal. For example, the SDC objects to the entry for June 30, 1998, in which both Ms. Kilcoyne and Mr. Nelson claimed time for nine hours of work. The SDC says, "When all of Mr. Nelson's hours on the pages of the statement are added together, they appear to include the entire 9 hours, for which compensation at Mr. nelson's hourly rate of $185.00 is sought instead of at Ms. Kilcoyne's hourly rate of $55.00." The flaw in this argument is the SDC's assumption that only one person who is involved in a certain project can charge for the time spent. There is nothing that requires, when two or more people work together or on the same day, that the charge be for only the person with the lowest hourly rate. I find no reason to doubt that the plaintiff made a bona fide calculation as to the hours.

■ The next objection is that Ms. Meunier spent an excessive amount of time preparing for and taking the deposition of Linda Jackson–Cocroft in August, 1996. While the deposition itself was only and hour and a half, I do not believe that the total of 9.15 hours spent by Ms. Meunier is excessive. The testimony of this witness was important and was made delicate by her hostility. It is not unreasonable for an attorney to spend over seven hours getting ready for the deposition of such a key witness. Ms. Jackson–Cocroft is the person who decided not to give Mr. Drews an interview for the writer position. Furthermore, she was one of the first witnesses that the plaintiff deposed; it is likely that an attorney spends more time getting ready for the earlier depositions.

■ The SDC's final objection is that much of the attorneys' time was spent on Mr. Drews' unsuccessful claims and, as a result, his attorneys should not be compensated for this time. Because Mr. Drews did not succeed on his claims that the SDC both discriminated and retaliated against him when it terminated him, or on his

section 1983 claim, the SDC believes that Mr. Drews should only receive 25 percent of his requested attorneys' fees. The court cannot, however, arbitrarily reduce a plaintiff's attorneys' fees.

It is true that a plaintiff's success on his claims is an important factor in determining what amount of attorneys' fees he should receive. *See Merriweather v. Family Dollar Stores,* 103 F.3d 576, 583 (7th Cir.1996) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "Just as crucial is whether a plaintiff's successful and unsuccessful claims are related: where a claim on which a plaintiff won is unrelated to a claim on which she lost, the plaintiff should not recover for the unsuccessful claim." *Merriweather,* 103 F.3d at 583. The question is therefore whether Mr. Drews' section 1983 claim and his claims regarding his termination are so related to his promotion claim that all the claims involved "a common core of facts or related legal theories." *Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir.1998).

I do not believe that it is possible completely to separate Mr. Drews' section 1983 equal protection claim from the Title VII claim on which he prevailed. Although I dismissed that claim on the SDC's motion for judgment as a matter of law, at least part of that claim was substantially related to the underlying facts that supported Mr. Drews' promotion claim. While the section 1983 claim also encompassed Mr. Drews' termination claims, it would be hard to determine how much of that claim focused on the denial of the interview and how much focused on his termination. Indeed, the plaintiff's section 1983 claim was really just another cause of action based on the same facts underlying the litigation as a whole. In other words, the litigation would have looked the same if Mr. Drews had never brought a section 1983 claim. Therefore, any reduction in attorneys' fees based on the unrelatedness of his termination claims to his prevailing

claim will substantially reflect the failure of Mr. Drews' section 1983 cause of action.

I cannot agree with Mr. Drews' position that his promotion and termination claims were so interrelated as to create a common core of facts. It is true that the majority of the witnesses testified both about the SDC's failure to give Mr. Drews' an interview and about his subsequent termination. This does not mean, however, that the jury needed to hear evidence about the termination to decide whether the failure to interview him was discriminatory. In other words, this is not the converse situation like in *Merriweather,* 103 F.3d at 584, where the court upheld the district court's finding that "the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge." Indeed, the court of appeals has explicitly said that " 'a claim of discrimination and a claim of retaliation for opposing that discrimination' are different." *Id.* at 583 (quoting *Lenard v. Argento,* 808 F.2d 1242, 1246 (7th Cir.1987)).

Mr. Drews' promotion and termination claims involve different sets of facts. His promotion claim focused on his qualifications for the writer position and his interactions with Ms. Jackson–Cocroft. His termination claims focused on the residency requirement and on when the SDC knew that Mr. Drews did not live in the city of Milwaukee. The claim on which he prevailed did not depend on the two unsuccessful claims.

I do not believe, however, that it is appropriate to reduce Mr. Drews' award of attorneys' fees by three-fourths, or even two-thirds. I cannot find that if Mr. Drews' attorneys had argued only the promotion claim that they would have only spent 25 percent of the time that they actually spent. It is not easy, for the lawyers or for the court, to apportion a certain lawyering task to a particular claim. Nevertheless, the attorneys spent a substantial amount of time, both in preparation for trial and in the trial itself, focusing exclu-

sively on Mr. Drews' termination from the SDC. If not for his unsuccessful claims, the depositions would have been shorter, the parties would have had to produce less evidence, and the witnesses would have been fewer. I believe that if Mr. Drews had only brought his promotion claim, his would have spent 60 percent of the amount of time that they actually spent. I will therefore reduce Mr. Drews' requested attorneys' fees by 40 percent. He is entitled to attorneys' fees in the amount of $31,609.20.

### III. Conclusion

Mr. Drews is entitled to back pay in the amount of $12,625.00, plus prejudgment interest, and to attorneys' fees in the amount of $31,609.00. The court will enter judgment in this action once it has resolved the correct amount of prejudgment interest that the plaintiff is entitled to on the court's award of back pay.

Therefore, IT IS ORDERED that the plaintiff be and hereby is directed to submit the prejudgment interest, calculated using the average market rate for each year of the pendency of the litigation, compounding annually, that he is entitled to on the amount of $12,625.00 no later than Friday, August 21, 1998.

IT IS FURTHER ORDERED that the defendant be and hereby is directed to submit a response to the plaintiff's prejudgment interest calculation, if any, no later than Friday, August 29, 1998.